Tilghman C. J.
This is an action for money had and received, brought by Jackman, the plaintiff below, against Dorsey, the defendant, who had sold and conveyed to the plaintiff, a tract of land, without warranty of any kind. The plain* tiff had paid the purchase money, after which, apprehending the title to be defective, and having made a second purchase from the person in whom he supposed the true title to be vested, he brought this action to recover the money paid on the bad title. The president of the Court of Common Pleas of Washington county, charged the jury in favour of the plaintiff, whereupon the counsel for the defendant excepted to his opinion, and the cause has been removed to this Court by writ of error.
The opinion of the Court of Common Pleas, was founded upon this principle, that the action for money had and received, is in nature of a bill in equity, and lies in all cases, where the defendant has received money, which he cannot in good conscience retain. The money having been paid in this case for land, to which the defendant had no title, the consideration of the payment has failed, and therefore it is concluded, it ought to be refunded.
But although the title' has proved defective, it does not fol.low, that the money cannot in good conscience be retained, because it may have been the intent of the parties, that the purchaser should run the risk of the title. Between the sale of goods and of lands there is a marked distinction. In the former, the law implies a warranty, but not' in the latter. *48 This distinction is of long standing, not founded on an arbitrary rule, but existing in the nature of things. With regard to goods, possession is strong evidence of title, and the only evidence which in most cases the purchaser can obtain. But as to lands, the case is altogether different, because the title depends on writings only. Of these writings, one party is as able to judge as the other; the construction is often doubtful, and in doubtful cases, where the purchaser requires no warranty, it is reasonable that the price should be reduced in proportion to the hazard. When it has been long understood, that no warranty is implied on a sale of lands, it must be supposed that both buyer and seller proceeded on that understanding. Consequently, the purchase money may be retained with good, conscience. I take for granted, that the seller has practised no fraud, or deception. If he has, the case is altered, and the purchaser may be relieved on other grounds, than failure of the consideration. That the law has been held as I have mentioned, will appear, not only from the opinion of elementary writers, but from adjudged cases, both at law and in equity, and I know of no adjudged case of good authority to the contrary./In the case of Lord Burkhurst v. Fenner, &c. Executors of Lady Dacres, 1 Rep. 1. it was determined, that if one seized in fee conveys to another in fee, without warranty, and. without mention of title papers, yet the papers pass to the feoffee, “ because he is to defend the land at his “peril; it is therefore reasonable, that he should have the “ papers as incident to the land, and that the feoffor should “ not have them, because he can receive no benefit by keeping “ them, nor. sustain damage by delivering them.” In Serjeant Maynard’s case, (2 Freem. 1.) the serjeant had .purchased land, and paid his money, but a common recovery feeing necessary to complete the title, he took a bond from the seller, conditioned for the suffering of the recovery, the seller tendered the recovery, but the serjeant having discovered a defect in the title, filed a bill in equity, to obtain restitution of his money; but the Court decreed against him, because it did not appear, that the seller had been guilty of any fraud. In 1 Fonbl. 363 to 366 (notes), the cases on this subject are collected, and the law laid down in the same manner. In Boyd v. Bobst, tried before Chief Justice M'Kean and Judge Rush, at Easton, June, 1785, (2 Dall. 91.) it is said that the rule caveat emptor applies only to real estate. In Cain *49 v. Henderson, 2 Binney, 108, it was decided by this Court, that the grantor who has given no warranty is a competent' witness to support the title of the grantee. This I take to be, and always to have been, the practice in all the Courts of Pennsylvania, and is incompatible with the principle of the grantor being answerable in an action for money had and received. There is another principle upon which courts of equity have given relief in case of a'defect in the title, discovered before payment of the purchase money. Concerning that principle I shall say nothing at present, as there is a case depending before us, in the Lancaster district, in which it will be necessary to take a full view of it. Confining myself then to the present case, it appears to me, that to support the action, rvould be to introduce a dangerous innovation tending to disturb what has long been considered as settled. I am therefore of opinion, that the judgment should be reversed and a venire facias de novo awarded.
Yeates'J.
The exception taken on the first argument to the judgment in this cause, that it was rendered for a larger sum in damages, than the plaintiff below had complained of in his declaration, would have been insurmountable, unless the error had been waved. The application for a remittitur should have been in the court below. We are bound to proceeed upon the judgment as we find it.
The error now relied upon, is, that in no form of action whatsoever could the consideration money paid for this tract of depreciation land, be recovered back, the vendor having been guilty of no fraud, and having assigned the commissioner’s deed without any covenants on his part respecting the goodness of title or of warranty.
The question before us is of great moment to the peace and tranquillity of society. ■ •
On the part of the defendant in error, it has been warmly contended, that a warranty must be tacitly implied, as well from the nature of the case, as the terms of the original con-' tract, whereby Dorsey agreed to sell and convey to Jackman, lot, No. 122, m Nicholson? s district of depreciation land, containing 308 acres, at two dollars per acre, the same having been a full and adequate price therefor; that it would be . against good conscience and equity for a man to retain money • which he had received for a defective title; and that cases *50 are to be found in the books, which would justify a recovery under circumstances similar to the present.
It cannot be denied, that there are many words, from the use whereof the law will imply a warranty in a deed, such as give and grant. Co. Lit. 384 (a), exchange, 4 Co. 121. But I have met with no authority either ancient or modern, which assigns that legal effect to the expressions, sell and convey. It is obvious that the words grant, bargain, and sell, are at least as strong as those used in the original instrument subscribed by Dorsey, when the terms of the 6th section of “ the act for “ acknowledging and recording of deeds,” passed in 1715, are taken into consideration ; and yet, the unanimous opinion of the members of this Court, in Gratz's Lessee v. Ewalt, (2 Binney, 98,) after much deliberation, was, that they amounted only to a special warranty. The like decision was given in Caine's Lessee v. Henderson, (ib. 108). It would be a gross inconsistency in us now to assert, that the words sell and convey are a tacit warranty in the transfer of lands. A similar question was determined in the same way in the Supreme Court of New York, on the legal effect of the words grant, bargain, sell, alien, and confirm, at common law, when inserted in a deed conveying a fee simple estate. Frostetal v. Raymond, (2 Caine's, 188). Dr. Woodeson, in his lectures, (vol. 2, p. 415), in speaking of the transfer of personal property, has said, that a fair price implies a warranty, and that one is not supposed to part with his money, without expecting an adequate compensation : but I am yet to learn, that this doctrine has been applied to the sale of lands, where a deed has been given and possession taken under it. Indeed the principle even as to personal property, when transferred, came before the Supreme Court of New York in Seixas v. Woods, (2 Caine's, 48), in an action on the case for selling peachum wood for Brazilletto, the former worth hardly any thing, the latter of considerable value. It was there determined, upon a full review of the cases, that if, upon a sale of goods, there be neither a warranty nor deceit, the purchaser buys at his peril; and, that there is no instance in the English law of a contrary rule being laid down.
As to the honesty and equity of Jackman!s case, it is certain, that according to the civil law, the seller of either real or personal property was obliged to inform the buyer of all the defects of the subject of the contract, and was responsi *51 ble to him for any latent defect, though not. known at the time of sale. But the United States of America in general, and ‘ this state in particular, have repudiated that system. We claim as our birth-right the common law of England, which, in the language of Lord Hobart, like a nursing father makes' void only that part where the fault is, but preserves the rest. 1 Mod. 35. It has great regard to the usage and practice of the people, being nothing else but common usage with which it complies, and alters with the exigency of affairs. 2 Mod 238. It does not adopt a rigid rule of morals, ill suited to the state of society and the usual intercourse of mankind. It happily reconciles the claims of convenience with the duties' of good faith, by requiring the purchaser to apply his attention to those particulars, which may be supposed within the the reach of his observation and judgment, and the vendor to communicate those particulars and defects which cannot be supposed to be immediately within the reach of such attention : and even against his want of vigilance the purchaser may provide, by requiring the vendor expressly to warrant the property sold. 2 Caine’s, 55. Our decision must be governed by this common law in all cases wherein it may be' applicable to our local situation, and where it has not been' altered by the municipal acts of the legislature. We are not at liberty to remove the settled land marks of property, although individually we may be dissatisfied with the policy of particular parts of the system, or their abstract justice, when applied to special cases, which may forcibly strike our minds.
I proceed to consider the authorities which have been cited and relied upon by the defendant in error.
I have already remarked on the position of Dr. Woodeson, that a fair price implies a warranty. Seixas v. Wood, fully shows, that it is not authorised by any judicial decision.
D'Utrecht v. Melchior, 1 Dal. 428, was determined upon the' ground of fraud and imposition. No lands could be found upon which the conveyance could operate; and the authority of the case itself has been much questioned in the Supreme Court of New York.
Moses v. M'Farland, has been impaired by the late decisions. The suit for money had and received was a favourite action of Lord Mansfield, but it has been stretched too far. The doctrine is too broadly laid down, when it asserts, that wherever one man has money which another ought to have" *52 the latter may sustain a suit therefor;, or that wherever a 'man has an equitable claim, he. has also a legal action. It is not universally true, that money can be recovered, back, when, by the,ties of natural justice and equity, it ought not to be retained, and an instance is put by Lord Mansfield, in this very case ; when he says, “ it is most clear, that the merits “ of a judgment can-never be overhauled by an original suit “ either at law or in equity.” 2 Burr, 1009. It is not difficult to conceive, that a judgment may have been rendered in a personal action, where .injustice has been done, from the merits of the cause not being fully before the Court, and the money paid thereon. What mode of redress does the wisdom of the law furnish on the occurrence, of such an event ?
Bingham v. Bingham, 1 Ves. 126, was grounded on the plain mistake of the party, who purchased of another his own lands ignorantly; and fell properly within the jurisdiction.of a court of equity. . • ,
The anonymous case in 2 Cha. Cas. 19, is the strongest which has been cited for the defendant in error. There Lord Chancellor Finch relieved the complainant from the payment of the purchase money, on an eviction of the lands by title paramount, although the vendor had covenanted only-for himself and those claiming under him. The reporter has questioned the correctness of the decree, and whoever carefully reads the note, in 1 Fonbl. 361, will be satisfied that it leads to the most serious inconveniences, ,by opening contracts at any distance of time, however guarded and bounded they may be in their terms. Sugden, in his.law of vendors and.purchasers, has made some very pertinent remarks on this ease. (Pages 315, 316).
Upon the other hand, we have express adjudications in our books, .that the rule, of caveat- emptor strictly applies to-the purchase of lands, and that the consideration money cannot be recovered back after a deed executed, unless in cases of fraud, where some covenant inserted in. the. deed has been broken. The purchaser has it in his power to protect himself by proper covenants, and there is no reason why the law should provide, to him a remedy, where, he has himself been wholly inattentive and negligent in this particular, Rolwell v. Vaughan, Cro. Fac. 197. Medina v. Staughton, 1 Salk, 211. I feel myself almost at liberty to cite the strong, case of Bree v. Holbeck, Doug. 630, (654,) which has been more than *53 Once sanctioned by this Court, and must therefore be consisidered as evidence of the law of this state. It was there resolved, that a suit would’ not lie to recover back a sum of money paid in consideration of the assignment of a mortgage, although it turned out to-' be a mere forgery. ■ It was incumbent on the purchaser to look to the goodness of it. AÍ1 the modern elementary writers have adopted the principles of this decision, and every prudent man conversant in land regulates his conduct theréby. ’ It therefore follows, that however reasonable it may appear to us, that a man who conveys lands for an adequate consideration,‘without any' special covenants in his deed, should be--held bound to render compensation where the title proves -defective, yet as the law is clearly otherwise, we are bound to acquiesce in its provisions. Let it be understood, that-my opinion goes no farther than to the case immediately before the Court, where the consideration money has been paid by the vendee, and he seek's to recover it back, upon the title of the lands sold proving defective, without having apt covenants inserted'in his deed for his security, and where no fraud-can be ascribed to the vendor. The question appears to me very different, under the uniform usage and practice of Pennsylvania, where the vendor seeks to compel the payment of the money by a suit upon his bond, although there is no covenant in the deed as to 'the title. That case has occurred in the Lancaster district at the last term, on a writ of error to Schuylkill county,-between Steinhouser v. Witman, administrator of Myer, has been fully argued, and is now sub judic 'e. “ Sufficient unto the day is " the evil thereof.” ■ I am of opinion, that the judgment of the court below be reversed, and a new trial awarded.
Brackenridge J.
A-:court, not in the last resort, but to which a writ of error’lies, may Very naturally be expected to confine itself to the mere scfipta of reports. The buoys of decision must govern, and it may be unsafe to take a single sounding, with a view' to a change- of direction. Hence •there is constraint on the faculty of thinking for One’s selfa great drawback on every exercise of mind. No wonder, therefore, that in decisions of inferior courts, there is sometimes found a want of expansion, or the appearance of it. Self-preservation, so far as respects the reputation of .their judgment, dictates' á careful looking to the- charts ;' 'and *54 though the body of the bay is continually changing, or the buoys set by no very skilful navigator, yet they are under the necessity of considering more what the judges above will think, than what they themselves ought to think, for of what use to give a judgment to be reversed ? But With regard to the judgment below, and the reasons given in this case, I have no such observation to make. There is a freedom of thinking, which does great credit to the presiding judge, who has delivered his opinion. I may, perhaps, be wild in my notions of equity, and disposed too much to venture out to sea, while it might be safer to hug the head-land of decisions rather than to trust either compass or stars. But
“ Rerpit hum tutus nimium iimidusque proceUa.”
[The (oo fearful of a storm, scrape the coast and are in danger of a shoal.]
I am conscious to myself that I feel a constant struggle to break loose from the application of a general rule to a particular case, and it is because I almost always see something in the particular case, which will distinguish it from other cases, and renders the application of the general rule “ the establish- “ ing iniquity by law.” Now let any man of ordinary understanding, laying aside books, and taking up this case, on its own circumstances, say what the equity of it must be. I will first consider this, and then, taking up books for my greater satisfaction, I will see how far the reason of others may accord with mine, in what they have said in cases, that may seem to approximate, and be analogous with this; in other words, what dicta, or principles laid down, may justify the view I have taken of it. Taking up the case as stated from the evidence, we have the language of the purchaser, a simple man, dealing with one whom he took to be of superior information in matters of land title, and in whose integrity he had reposed confidence. “ He expected an honest good title, “ according to the agreement,” and on taking the commissioners’ deed, which the seller imposed upon him, and which for the first time he had seen, he observed, that' he had u great confidence in the seller, and hoped he would not im“pose upon him an insufficient deed.”' This was on payment of the last instalment of the purchase money. He must be supposed to be unwilling to lose what of the purchase money he had before paid, or to be put to a suit at law, to recover it back. ‘ The improvements besides, which he might be sup *55 posed to have made, must be lost or thrown away, unless by a suit upon the contract, which is always a matter of certain' expense and trouble, in the attendance upon court, and seldom, if ever, in fact, however in contemplation of law, an adequate. redress and compensation may be obtained. No wonder that he was put off for the present with the commissioners’ deed, until he took advice and found that it was of no moment, or at least of a precarious consideration. In fact, it might reasonably be considered as of a precarious nature. I need not go into the reasons to show why it might be so considered. We all know that it is so considered, and in the understanding of the people, amounts to little more than a kind qf equitable claim upon the original owner, for the reimbursement of the taxes pajd, and some allowance for the service rendered, with the costs of sale. This is not owing to a want of power in the commonwealth, to give a title under the law; but in the want of skill ;n the commissioners, to give a title under their proceedings. On an ejectment by the original owner, the legality of the election of assessors must be proved, I mean those assessing the tax for which the land was sold; 2d, that a tax was assessed upon the land; 3d, that due notice was given of the taxes so assessed, to be paid, by advertisements in the gazettes; and 4th, in like manner advertisements in the gazettes of the sale made; 5th, the legality of the proceedings at the sales; and a variety of requisites in matters of form or substance, the want of any of which, in such a penal proceeding, as it may be called, will avoid. I do not know that I have ever known a single sale, in a court of law, capable of bearing the scrutiny of investi-' gation. Even in the hands of the most careful, and best informed commissioners, it is difficult to comply with every requisite of the law, and still more to prove in a court of justice, that every pre-requisite to the validity of a commissioner’s deed has taken place. But .when we know that commissioners are pot standing officers for any great length of time, but triennially elected by the people, and in some cases not always the best skilled in the law, even of the bulk of the people, or the most vigilant, and attentive to the minutiae of the business, how can we reasonably expect that their proceedings would be found correct? Under a knowledge of this, it is seldom that the original owner acquiesces under a sale, but brings an ejectment; and it VJSU3Í -for the pqrcha *56 ser at such a sale, holding a commissioner’s deed in his hand, to come forward and make terms with the original owner. There is scarcely a county town, or at least a county, in which there are not individuals who make a business of such purchasing, not with a view to hold the lands, but to make terms. In the common appellation of the country, these are said to speculate at commissioners’ sales, and to be speculators. For one of these to talk of having a good title, and of selling as having a fee simple in himself, clear of difficulty, and to impose upon an honest and unsuspecting man, knowing nothing of these speculations, would be considered an absurdity in the conception of the people, and a manifest fraud and imposition. It would excite such indignation in a country where such things are all well known, that no man could withhold the appellation of fradulent from the transaction.
But what was that agreement in this case, to which the evidence referred ? It was in these words, “ I do hereby “ agree to sell and convey, the conveyance to be made as “soon as convenient.” Agree to sell and convey. This carries no warranty, says the defendant, no general -warranty. It is but a special undertaking, that he will convey such title as he has. It carries no implication that he has a title good against any one else, and it has been determined in Pennsylvania, that the words, “grant, bargain, and sell,” carry no covenant, that the grantor warrants against title paramount, and agreeing to “ sell and convey,” cannot carry more than the words “ grant, bargain, and sell,” would do. But here is the distinction in the case. If a man takes such a deed with but an implied special warranty, the taking the deed being the conclusion of the transaction with the purchaser, he shall be considered as satisfied with it, and the law will hold him for having taken such a deed without a general warranty, or clause of further assurance, he shall be bound by it. But here the contract, as to' its performance in the evidence of title that shall be given, is left open. He agrees to sell and convey, but whether with a general warranty or clause of further assurance, or without, is not stipulated. And if every grant is to be construed most strongly against the grantor, why not every agreement to grant ? Instead of lettin'g a vendor off who has sold for a full value, by saying that he only sold the right he had, I would hold him to the implication that he had a right against all the world, and was *57 bound to convey with a warranty. I would construe their agreement as I would the clause of further assurance, which' is sometimes inserted in a deed, and which, if inserted, will any one say, that it did not amount to a general warranty ? “ I agree to sell and convey, so far as respects myself only will any one say, that if this language had been used, even this simple' man would not have revolted ? So far as respects yourself only ? what do you mean by that ? have you not a title ? — I have a commissioners’ title. — I expect an honest good title, says the purchaser. — This is an honest good title, says the vendor. If this conversation had taken place, before the payment of the purchase money, there might be something to be said; though even in that case I would consider it an imposition, and an undue advantage taken by a man well-informed, over a man uninformed and ignorant. But it is a particular ingredient in this case, that the seller had got the money, or the greater part of it, before he disclosed the kind of title which he had to give ; in fact, he had got the whole of the purchase money, for it was on the payment of the last instalment, that he produced the commissioners’ deed. If the vendor thinks that the title is good, he can have the less reason to pay back the money and rest upon it. Having adverted a little to the facts of this case, I apply' myself to examine the principles that apply to it, deduced from the English law and what are called authorities, premising first, what may be called a philippic against the decisions of the English courts on this point by Judge Cooper, in his notes to a translation of the Institutes of Justinian, lately published, which both from the character of his talent, and the intrinsic weight of the observations, deserve consideration. “The rule of “ caveat emptor,” says he, “ ought to be changed into caveat "venditor. It is a disgrace to the law, that such a maxim “ should be adopted. The chancery cases in support of this “ rule, ought to be classed as cases in support of falsehood “andfraud.” Cooper’s Fustin. 611; and again 615, “the seller is considered in all cases as warranting the title.”
But I shall take úp the case on the ground óf English de¿ cisions, “ a purchaser will be entitled to relief on account of “ any latent defect in the title of the estate, which was not dis- “ closed to him, and of which the vendor was arvare.” Sug* den, 8. “ In most cases the rule caveat emptor applies, and “ therefore, although there be defects in the estate, yet if they *58 “ are patent, the subject can have no relief,” ibid. 195. This must imply, that if not patent he can. “ For where the de- “ feet is a latent one, if the vendor be aware of it, and do not acquaint the purchaser with the fact, the contract may be “ set aside. The ground and basis of a contract of this kind “ is the scienter. If the vendor was not aware of the defect, “ he will not be answerable for it.” Ibid. 199. “ For if at the d time of the contract the vendor himself was not aware of any defect in the estate, (title), it seems that the purchaser “ must take the estate with all its faults, and cannot claim “ any compensation for them.” Ibid. 1. This must imply, that if he was aware it would be otherwise. “ A pur- “ chaser may safely take possession of the estate at the time “ the contract was entered into, as he cannot be held to have “ waved objections of which he was not aware.” Ibid. Could the vendee in the case before us be aware, that it was a com.missioner’s deed that was to be palmed upon him for a title?
But I quit Sugden, and take FonblanqiLe. “ If the vendor “ appear to have known of the defect of the title, and to have “ concealed it, the purchase money may be recovered back.” Fonbl. 373. “ An affirmation at the time of the sale is a warranty, provided it appears on the evidence to have been in "tended.” Ibid. And per Fuller — I had forgot that I am precludéd from citing the case, and therefore I stop short, but give the sentiments as my own, which I have a right to do. “ A fraud in the seller has the same effect with an ex- “ press warranty.” By the bye, this is common sense, and why need I cite any authority? But I have in my mind the dictum of another judge, and it is so excellent, that I adopt it, and it may be cited through the medium of Finney’s Reports in time to come, provided that a report be made of this case. “ On the sale of real estate the purchaser has no re“medy, unless he takes a special covenant or warranty, provided there be no fraud practised on him to induce him “ to purchase. Without warranty or fraud the buyer must “ put up with losses even from latent defects.” This is the very utmost rigour of the English law from the cases adjudged. But it is the universal maxim, that fraud vitiates whatever it touches. It avoids the contract ab initio, et quod initio non valet, tractu temporis non convalescit. No length .of time, no change of circumstances can give it validity. I call this a case offraud., rank fraud. I will not say, “ it smells *59 ie to heaven,” because we confine ourselves to courts of justice upon earth. “ I agree to sell and convey.” This is but' an agreement it may be said, and in England would only be enforced in equity. The chancellor might and would decree a specific execution of the contract. Would he upon this, decree k conveyance by warranty ? I do not say that he would, for he might leave the party to an action at law if he should be evicted, and the courts of law would say what ought to be considered the legal effects of the words, I have sold and conveyed. But when a fee simple price appeared to have been paid, it cannot be but that the chancellor would decree a conveyance, dedi et concessi at least; and then before the statute quia emptores, 18 Echo. 1, c. 1, which has never been in force in this country, would have carried a warranty against the feoffor and his heirs. But where the full value of a fee simple estate to a man and his heirs appeared to have been bargained for, can it be supposed that a judge of equity would not decree a conveyance to him and his heirs ; inasmuch as in England., since the statute of quia emptores, the' words “ give and grant,” would not carry a warranty against him and his heirs ? But if he could not decree a warranty against all the world, where it appeared the grantor had no title that he could warrant, or was unwilling to do it, could not the chancellor at the instance of the purchaser declare the contract rescinded, and order a repayment of the consideration? What remedy, says Hargrave, note 382, to Co. Litt. 384, a. has a person purchasing under a defective title exclusively of the warranty or covenants, or where the title is subject to a defect, which the warranty or covenants do not reach ? In every case where the seller conceals from the purchaser the instrument _or the fact which occasions the defect, or conceals from him an incumbrance to which the estate is subject, it is a fraud, and the purchaser has the remedy of an action on the case in the nature of an action of deceit. But a judgment obtained after the death of the seller in an action of this nature, can only charge his property as a simple contract, and will not, unless under very particular circumstances, charge his real assets. A bill in Chancery in most cases will be found a better remedy. It will lead to a_ better discovery of the concealment and the circumstances- attending it, and in some cases will enable the Court to constitute a trust in favour of the injured .purchaser. *60 But where the instrument or the fact, which occasions the defect of title, is produced to the purchaser, he has fair notice of it, and if the covenants do not extend to it he appears to be without remedy. This leads to a more distinct consideration of the construction which has been put upon that clause of the act of assembly, 28 March, 1715. The words grant, bargain, and sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit, that the grantor was seized of an indefeasible estate in fee simple freed from incumbrance done or suffered from the grantor, except the rents and services due to the lord of the fee, as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed. The Construction put upon this in Pennsylvania was not without dissatisfaction by the bar. But all or most titles were imperfect at an early period. A mere occupancy or possession Was in many instances the only title. These inchoate rights were transferred from one to another, just as they had come to those transferring, and it would have been a check upon such buying and selling, which the settlement of the countiy and the policy of the law from this consideration favoured, if a seller was from ,the mere words of grant, bargain, and sell, construed to bind himself to warrant against all the World. Unless he gave an express warranty to such extent, he Was therefore not supposed to mean it; and where the purchaser accepted a conveyance without it, it was his own act, and he was not supposed to require it. It is quite a different matter where the contract is executory, and no such implication can be drawn from the purchaser’s accepting a conveyance short of such a warranty, as in'this case, where it was at the time the conveyance came to be offered, that the per-chaser could be supposed to have a right to make exceptions. “ He expected an honest and good title.” That amounts to an agreement that the title should be good against all the world. And where all the muniments of title were kept out of view qntil the payment of the last instalment of the purchase money came to be made, the purchaser in the- understanding of the contract was not to expect a deed, and when this came to be the case, he is shown a defective title, as that of the commissioners’ deed, as we have seen, must be supposed to be. This must be considered as withholding all knowledge of the very document, nay the only document by which *61 the grantor had any colour of right to the estate ; it was under the circumstances of the case ; and will any one say, that the construction put upon the act of assembly does not except the case of fraud? “ Where the vendee has paid any “part of the purchase money he may affirm the agreement, “ by bringing an action for the non-performance of it; or, he “ may elect to disaffirm the agreement ab initio by reason of “ the fraud, and bring an action for money had and received “ to his use.” 2 Burr. 1011, and Sugden, 159. If the vendor knew of the defective title and concealed it, the purchasé money may be recovered back. Fonbl. 374. An action for money had and received lies for money paid by mistake, of upon a consideration which happens to fail, or for money got through imposition. Ibid, and 2 Com. 52. The books are full abundantly as to this head, I need not cite authorities or dwell upon it. So that as to the form of action for money had and, received, which is said to be iñ the nature of a bill in equity, it calls only for the money paid, with interest from the time of payment, which is the mildest shape in which the contract could, be pursued, where the consideration had failed. The only objection to the mode is the want of notice from the declaration, on the ground on which the money had been received, so as to call for the evidence that might rebut, or to bar a future demand on the same ground. This it has been usual to help by a specification, which the Court when called upon will direct. Where more than the money paid with interest was demanded, by reason of á fraud, and damages for the not fulfilling the agreement, it would behove to have brought the action on the special agreement, though it might be brought on the special agreement and the sum paid with interest only demanded. But the action for money had and received has obtained this latitude, and though there is less reason in this state than in England, where it was adopted in this latitude to avoid a suit in chancery, yet it has been introduced in this extent here, and until a decision to the contrary or'notice of it, the suitor would be entrapped by an objection to the form of such proceeding.
judgment reversed.