Albany General Term, July, 1848.  *Paige, Watson, and Parker,* Justices.

3b 323
165a 126

## McCoy & Quackenboss *vs.* Artcher.

The maxim, with regard to sales of personal property, is *fides servanda ;* and if there be no express contract of warranty, general rules of implication should be adopted, with this maxim constantly in view.

A warranty of title should only be implied when good faith requires it:

The possession of a vendor of chattels is equivalent to an affirmation of title. And in such a case the vendor is to be held to an implied warranty of title; though nothing be said on the subject, between the parties.

But if the property sold be, at the time of the sale, in the possession of a third person, and there be no affirmation, or assertion, of ownership, no warranty of title will be implied.

If, however, there be an affirmation of title where the vendor is not in possession, the vendor should be subjected to the same liability as if he had the possession of the property.

Error to the Albany mayor's court.  Artcher sued McCoy & Quackenboss in the mayor's court, in assumpsit, to recover for a breach of warranty of title to a promissory note of one Josiah Porter, alleged to have been sold by McCoy & Quackenboss to Artcher, under the following circumstances.

On the 7th of September, 1840, McCoy & Quackenboss, who were merchants residing at Albany, sold to James Arnold, who lived in Chautauque county, stoves and hollow ware to the amount of $737,77, and took Arnold's notes for the same; one payable on the 1st of January, 1841, and the other on the 1st of April, 1841.  Arnold had a contract with Bingham, who was in the tin and copper business at Vienna, Ontario county, by which Arnold was to furnish stoves for Bingham to trim, with proper stove furniture, and the stoves were then to be sold, and the profits divided between Arnold and Bingham.  The stoves were accordingly forwarded to Bingham.  But about that time Bingham concluded to sell out his stock; and he notified David Hulburt, who was the brother-in-law of Arnold, and resided at Vienna, that the stoves had arrived, and that he could not perform the contract with Arnold.  On learning these

McCoy v. Artcher.

facts, Arnold wrote to Hulburt enclosing to him McCoy & Quackenboss's bill for the stoves, and authorized him to sell the stoves for something that would pay the debt from Arnold to McCoy & Quackenboss. Hulburt accordingly sold the stoves to Josiah Porter, of Naples, Ontario county, on the 20th of October, 1840, and took his note for $737,77, payable in one year, to James Arnold or bearer, and sent the note to Arnold. James Arnold went to Ohio, and in the winter of 1841 enclosed the Porter note, by mail, to his brother William W. Arnold residing at Ballston, with directions to keep it till his (James Arnold's) notes were about coming due, and then to send it to McCoy & Quackenboss in exchange for his note. In April following, Hulburt was in Albany; when an interview took place between him and McCoy, in the presence of Artcher, at which Hulburt informed McCoy of the facts in regard to the taking of the Porter note, and said that William W. Arnold had the note for McCoy & Quackenboss. But McCoy said that he had no confidence in the statement; that he did not believe there was any such note in existence, and charged Hulburt with having sold the stoves for his own benefit; and threatened him with a prosecution. Artcher, however, told McCoy he had long dealt with Hulburt, and believed his statement. Hulburt proceeded to New-York, and the next day an agreement was made between McCoy and Artcher, by which McCoy & Quackenboss sold their demand, for fifty cents on a dollar, and took Artcher's note for $368,88, payable after the Porter note fell due.

There was much conflicting evidence, at the trial, as to what was sold by McCoy & Quackenboss to Artcher; the former contending that it was only their notes against Arnold, and the latter claiming that it was the Porter note. The weight of evidence showed that the Arnold notes were sold, and also any further security McCoy & Quackenboss had for the payment of the Arnold debt; including, of course, the Porter note if such a note had been taken for them. It appeared that at the time of the sale the Arnold notes were delivered by McCoy to Artcher. A few days after that, McCoy & Quackenboss received the

Porter note, in a letter from William W. Arnold, and delivered it to Artcher; who received the proceeds when it fell due. The Arnold notes were returned, in a letter, to William W. Arnold.

In the winter of 1841, proceedings were instituted against Arnold as an absconding debtor; and the first publication took place early in February, 1841, while the Porter note still remained in the hands of William W. Arnold. The trustees appointed under these proceedings, in 1843, sued Artcher for the proceeds of the Porter note; claiming that it belonged to the estate of James Arnold, at the time of the first publication under the statute, and recovered $885,34. McCoy & Quackenboss were duly notified of the suit against Artcher, and were called on to defend it.

When the plaintiff rested, the defendants' counsel asked the court to nonsuit the plaintiff, on the ground that no warranty of the Porter note would be implied, when the defendants were out of possession, and had never seen it, and did not believe in its existence. The court denied the motion, and the defendants excepted. After the testimony was closed, the court charged, among other things, that if the Porter note was one of the things sold by McCoy & Quackenboss to Artcher, then they must be deemed, in law, as warranting the title to that note. To which the defendants also excepted.

The defendants' counsel asked the court to charge, 1. That if the Arnold notes were the subject of the sale, and after the sale the Porter note was received in payment of the Arnold notes, no warranty of the title of the Porter note could be implied. 2. That if the Porter note was the subject of the sale, yet if, from the nature and circumstances of the case, the jury should believe it was not the intention of McCoy to warrant the title, no warranty could be implied. 3. That if the Porter note was the subject of the sale, yet if the jury should, from the circumstances, believe that it was not the understanding of the parties, at the time, that McCoy should warrant the title, no warranty could be implied. 4. That if the Porter note was the subject of the sale, yet the circumstances proved, if the jury

believed the testimony, rebutted the presumption of any warranty of the title which might otherwise be implied.

The court refused to charge as requested, on each of these propositions; and the defendants' counsel excepted. The jury gave a verdict in favor of Artcher for $947,29.

*Hamilton Harris*, for the plaintiffs in error.

*John Newland*, for the defendant in error.

*By the Court*, PARKER, J. The controlling question, presented in this case, is whether there was an implied warranty of title on the sale of the note, from McCoy & Quackenboss to Artcher. McCoy & Quackenboss were not, at the time of the sale, in the possession of the note. It still remained in the possession of Wm. W. Arnold, the agent of James Arnold. They did not, at the time, believe the story of Hulburt, that such a note had been taken for them, and McCoy so stated, repeatedly, to Artcher. The latter, who was a relative of Hulburt, and better acquainted with him, believed his representations. The Porter note was no doubt included in the sale to Artcher, as was found by the jury; but it was not the only subject of the sale. McCoy & Quackenboss sold to Artcher their demand against James Arnold. This embraced not only the James Arnold notes, which were delivered to Artcher at the time of the sale, but also the Porter note, if it should turn out that there was any such note for McCoy & Quackenboss. Artcher would not have purchased, unless he had expected to get the Porter note, for he knew the notes of James Arnold were worthless; and McCoy & Quackenboss would not have sold the Porter note for half its face if they had been certain they were the owners of it, or would receive it. For it seems to have been understood by all the parties that Porter was abundantly responsible.

There was certainly no express warranty, or affirmation, of title; and we must ascertain whether, under all the circum-

stances above stated, McCoy & Quackenboss are liable on an implied warranty.

The general rule is well settled, and is unquestioned, that in the sale of personal property there is an implied warranty of title. But it is claimed, on the part of the plaintiffs in error, that such rule is not applicable where the vendor is not in possession of the chattel sold, at the time of the sale. Upon this point there has been some conflict of opinion ; and the question not having been judicially settled, in this state, it is necessary to give it a careful examination.

The rule is laid down in 2 *Kent's Com.* 478, *5th ed.*, as follows : " In every sale of a chattel, if the possession be, at the time, in another, and there be no covenant or warranty of title, the rule of *caveat emptor* applies, and the party buys at his peril. But if the seller has possession of the article, and he sells it as his own, and not as agent for another, and for a fair price, he is understood to warrant the title." The same distinction is recognized in *Bouvier's Law Dict.* 2d vol. 623, (*ed. of* 1843 ;) *Smith's Mer. Law,* (*Am. ed. of* 1847,) *page* 509, *note ;* and in a well reasoned article in the *American Jurist, vol.* 12, *page* 312. But it is said by William W. Story, in his Treatise on the Law of Contracts, section 535, " A warranty of title will be presumed, whether the goods sold be, at the time of the sale, in the possession of the vendor, or of a third person, unless the contrary be then expressed." The same doctrine is substantially repeated in the same author's work on Sales, section 367.

A brief examination of the authorities, and the reasons upon which they rest, will be necessary to enable us to decide by which rule we are to be governed. In *Roswell* v. *Vaughan,* (*Cro. Jac.* 197,) which was an action brought to recover damages for a failure of title to the tithes of the vicarage of South Stoke, at the time of the sale in the possession of another. Tanfield, chief baron, said, " But here he had not any possession : and it is no more than if one should sell lands wherein another is in possession, or a house whereof another is possessed, without covenant or warranty for the enjoyment, it is at the

McCoy *v.* Artcher.

peril of him who buys, and not reason he should have an action by the law, when he did not promise for himself." And judgment, upon that ground, was given for the defendant. *Crosse* v. *Gardner,* (*Carth.* 90,) was an action for failure of title to a pair of oxen sold by the defendant when in his possession, to the plaintiff. On motion in arrest, the court gave judgment for the plaintiff "because here the plaintiff had no means to know to whom the property of these oxen did belong, but only by the possession." The same case is reported in 1 *Shower,* 68, but not so fully as in Carthew. In *Medina* v. *Stoughton,* (1 *Salk.* 210,) Holt, Ch. J. said: "Where one having the possession of any personal chattel sells it, the bare affirming it to be his, amounts to a warranty, and an action lies on the affirmation; for his having possession is a color of title, and perhaps no other color of title can be made out: *aliter* where the seller is out of possession, for there may be room to question the seller's title, and *caveat emptor,* in such case, to have either an express warranty or a good title." But in the report of this case in 1 *Lord Raym.* 593, this portion of the opinion of Chief Justice Holt is omitted. It is said the case last cited is overruled in *Pasley* v. *Freeman,* (3 *T. R.* 57,) where Buller, J. says, "if an affirmation at the time of the sale be a warranty, I cannot feel a distinction between the vendor's being in or out of possession. The thing is bought of him in consequence of his assertion; and if there be any difference it seems to me the case is strongest against the vendor when he is out of possession, because then the vendor has nothing but the warranty to rely upon." There is nothing in this case sanctioning the doctrine that where the chattel sold was in the possession of a third person, an action for a breach of warranty can be maintained without an affirmation of title. On the contrary, the opinion of Justice Buller places the liability solely on the ground of an affirmation amounting to a warranty. If it thus becomes an express warranty, the liability of the vendor would not be questioned. And if it be an affirmation of title only, not amounting to a warranty, there would seem good reason in holding that there was an implied warranty, because it would be equivalent

to the affirmation made by the vendor by the fact of his possession.   See 2 *Kent's Com. 5th ed.* 477, *note b.*, where the case of *Pasley* v. *Freeman* is commented on, and shown not to be inconsistent with the rule in Kent, as above quoted.

In *Adamson* v. *Jarvis*, (12 *Moore*, 253,) Best, Ch. J., after examining the cases, says : " These cases rest on the principle that if a man, having the possession of property *which gives him the character of owner*, affirms that he is owner and thereby induces another to buy, when in point of fact the affirmant is not the owner, he is liable to an action."   So far as the courts in this country have examined this question, the authorities sustain the distinction laid down by Chancellor Kent.   In *Gookin* v. *Graham*, (5 *Hump. Rep.* 480,) the supreme court of Tennessee said : " In a sale of personal property there is always an implied warranty of title, unless it be purchased under such circumstances as clearly show that the vendee intended to risk the title ; as if the vendor be not in possession, but the same be held adversely by another."   See also *Andres* v. *Lee*, (1 *Dev. & Bat.* 318.)   So in *Trigg* v. *Ferris*, (5 *Humph.* 343,) Reeve, J., in giving the opinion of the court, said, " It is a well settled principle, applicable to all sales of chattels *in the possession of the vendor*, that the act or fact of sale itself, by operation of law, implies and involves a warranty of title."

The cases cited by Story in support of the law as he states it, are those in which the general rule is reiterated which makes the vendor of a chattel liable on an implied warranty.   They are *Furnis* v. *Liecester*, (*Cro. Jac.* 474 ;)  *Defreeze* v. *Trumper*, (1 *John. Rep.* 274 ;) *Spratt* v. *Jeffrey*, (10 *Barn. & Cress.* 249 ;) *Robinson* v. *Anderton*, (*Peake, N. P. Rep.* 94 ;)  *Peto* v. *Blades*, (5 *Taunt. Rep.* 657 ;)  *Coolidge* v. *Brigham*, (1 *Met. Rep.* 551 ;) *Dorsey* v. *Jackman*, (1 *Serg. & Rawle*, 42 ;)  *Rew* v. *Barber*, (3 *Cowen's Rep.* 272 ;)  *Herman* v. *Verney*, (6 *John. Rep.* 5 ;) *Colcock* v. *Reid*, (3 *Wend. Rep.* 513.)   And this is said in those cases without stating the exception, for the reason that no facts warranting an exception were before the court.   But I think whenever such facts have occurred, so as to raise the question, the courts have recognized the distinction stated in Kent.   And

McCoy *v.* Artcher.

I find no case, either in Great Britain or in this country, sustaining the position that a vendor, who makes no affirmation or representation on the sale of a chattel in the possession of a third person, can be held liable for a failure of title, on an implied warranty. On the contrary, when any reason is given for the rule, the possession of the vendor is, even in the cases cited by Story, evidently regarded by the courts as the foundation of the implied warranty of title.

In *Cooledge* v. *Brigham*, (1 *Met.* 551,) Wilde, J., after stating that there is always an implied warranty of title in a sale of chattels, says, " This rule of law is well established, and does not trench unreasonably upon the rule of the common law *caveat emptor.* The *possession* of personal property is prima facie evidence of title; and in many cases it would be difficult, if not impossible, before the sale, to discover the defect of title." The elementary writers also place the rule on the same ground. In *Fonb. Eq.* (*vol.* 1, *p.* 109, *note k,*) it is said " in the sale of goods the law implies the warranty of title: for the purchaser cannot have better evidence of title to goods than *the possession of the vendor.*"

I think, also, the doctrine held by Chancellor Kent sustainable upon principle, as well as authority. The object of the law is to carry out the *intention* of the parties. The maxim with regard to sales, is *fides servanda ;* and if there be no express contract of warranty, general rules of implication should be adopted with this maxim constantly in view. A warranty should only be implied when good faith requires it. I think it is fair and equitable to hold that the possession of the vendor is equivalent to an affirmation of title, and that in such case the vendor shall be held to an implied warranty of title, though nothing be said on the subject, between the parties. But if the property sold be, at the time of the sale, in the possession of a third person, and there be no affirmation or assurance of ownership, no warranty of title should be implied. If, however, there be an affirmation of title where the vendor is not in possession, the vendor should be subjected to the same liability as if he had the possession of the property. We have not, on this

subject, adopted the civil law rule *caveat venditor ;* but the rule of the common law, *caveat emptor,* is our law. (*Moses* v. *Mead,* 1 *Den.* 365. *Hart* v. *Wright,* 17 *Wend.* 267. 18 *Id.* 449.) I am therefore of the opinion that the court below erred in refusing to nonsuit the plaintiff.

But there are other questions presented in this case, in regard to which there can be no reasonable difference of opinion. Whatever may be the arbitrary rule of implication, the clearly expressed understanding of the parties can never be disregarded. The presumption of law that implies a warranty can always be rebutted by evidence showing that none was intended. If the rule laid down in Story were the correct one, it would not control the decision of this cause; for it is there conceded that no warranty is to be implied if " the contrary be expressed." Such an expression may be made as well by the acts as by the language of the parties. The intent and understanding of the parties must be sought from all the circumstances of the transaction.

In *Rodrigues* v. *Habersham,* (1 *Spear's S. C. Rep.* 314,) it was held "If a seller expressly refuse to warrant, there can be no pretence for raising the implied warranty ; but what amounts to a refusal to warrant must in general be submitted to a jury." In *Smith* v. *The Bank of the State of South Carolina,* (*Riley's Ch. Rep.* 113,) where the seller struck the clause of warranty out of a deed, it was decided in the court of equity that there was no implied warranty. The language of Gaston, J., in *Andrews* v. *Lee,* (1 *Dev. & Bat. Eq. Cas.* 321,) seems to me peculiarly applicable to this case. "The price shows that the purchase was a speculation ; and the giving of a note for the purchase money, without delivery of the property, or covenants from the vendors as to title, leaves scarcely room to doubt but that he bought at his own hazard."

In addition to these, there are other circumstances in this case tending strongly, if not conclusively, to show that Artcher purchased the Porter note at his own risk. Indeed I do not see how there could be any reasonable doubt on that point.

And the court below clearly erred in refusing to submit it to the jury to say what was the actual intention and understanding of the parties.

The judgment of the Albany mayor's court must therefore be reversed, with costs, and a venire de novo must issue.

---

SAME TERM.   *Harris, Watson, and Parker,* Justices.