*Philadelphia,*
*Thursday,*
*January 11.*

CARPENTIER *against* The Delaware Insurance Company.

*The arbitration law of 29th March* 1809, *embraces actions in the Supreme Court; but an appeal from the award of arbitrators, lies only to the Common Pleas.*
*If the defendants are a body corporate, they are entitled to appeal without entering into a recognisance of bail.*

CONDY for the defendants obtained a rule to shew cause why the rule of reference in this case, and the report of arbitrators thereon, should not be set aside, upon the ground that the rule had been entered without authority.

The action was instituted in the Common Pleas, and removed to this court, where the plaintiff, under the first section of the act of 29th *March* 1809, 9 *St. Laws* 125, entered a rule of reference. The defendants at the time, denied the authority of the rule, and protested against it; but under this protestation, they chose one of the three referees to whom the cause was submitted, and who awarded a large sum in favour of the plaintiff.

The question turned upon the construction of various sections of the act before referred to, which are hereafter particularly noticed in the opinion of the court.

The grounds upon which *Condy* and *Rawle* contended that the rule should be made absolute, were two.

1. That the arbitration law did not embrace cases in the Supreme Court. This they inferred from the circumstance

of this court's not being mentioned in the act,—from the *express* requisition of the law that an appeal from the award shall be entered in all cases with the prothonotary of the *proper county*, that is, in the Common Pleas, *section* 11,—from there being no provision for sending the record from this court to the Common Pleas in case of an appeal,—from the force of the expressions in the 1st section, " in all civil ac- " tions *brought* or that may be *brought* in any court of this " commonwealth," which do not include causes brought in the Common Pleas and removed to the Supreme Court,—and from the general rule of construction, that where a statute enumerates inferior persons and courts, though at the same time it uses general terms, persons or courts of a superior grade are not included in it.

2. That it did not embrace the case of a corporation, defendants. This they said resulted from the provisions of the 11th, 12th, and 13th sections upon the subject of appeals. In every case within the law an appeal is given; but in no case can it be obtained by the defendant, without entering into a recognisance, conditioned to pay the debt and costs, or to surrender him to jail. A corporation cannot give such a recognisance, because it cannot be surrendered. If it is given, it is an absolute recognisance to pay the money, which the law does not intend.

They said, at the same time, that although the question, to what court an appeal from the award in this cause should be made, was not directly involved, yet as the consequence of omitting to make a proper appeal in fifteen days, was that the award became final, it was of great importance to suitors, that an opinion should be expressed on that point.

*Ingersoll*, who shewed cause, contended, 1. That the language of the 1st section was as comprehensive as it could be made. It embraces all civil actions or suits in ANY court of this commonwealth; and it directs the rule of reference to be entered at the prothonotary's office, generally, not of the *proper county*, which, if the defendants' argument upon those words has any effect, is a complete answer to it. The law was intended to remedy the delay incident to judicial proceedings in this state; and it is well known, that from the increase of suits, and the defective organization of the judi-

1810.

CARPENTIER
*v.*
DELAWARE
INS. CO.

ciary, the mischief has been as severely felt in this court as in any other. The object should be to extend, rather than to narrow the remedy.

2. That a corporation, when plaintiffs, may enjoy the benefit of the law cannot be doubted. It would be extraordinary therefore, if, as defendants, they could deny it to others. But the fact is, the law contains no exception in their behalf; and although as it respects them, one part of the recognisance may be inoperative, yet the other is not, and therefore they may give it.

As to the forum of appeal, there are inconsistencies in the law which cannot be reconciled. It is fair therefore to resort to the argument *ab inconvenienti*. An appeal to the Common Pleas is a great evil, not only because it is always wrong to appeal from a superior to an inferior court, but because it is an instrument of the most vexatious delay, the very mischief the law intended to cure. Causes originate in the Common Pleas. After some time they are removed to this court. At the expiration of a year or two they are referred, and then by an appeal from the award, they are carried back to the Common Pleas, to take the standing of a new suit, and to run the same course over again. Such an appeal moreover enables a party to oust this court of its jurisdiction; he may effectually prevent the trial of the cause any where, except before arbitrators, or in the Common Pleas.

TILGHMAN C. J. delivered the court's opinion.

Three questions have been brought forward by the defendants' counsel in this case. 1st. Whether the supplement to the arbitration act, passed 29th *March* 1809, extends to suits depending in this court? 2d. Whether it extends to suits in which a body corporate is defendant? 3d. If the law comprehends suits in this court, to what court does the appeal from the report of the arbitrators lie? In the course of the argument, great stress has been laid on the inconveniences which will ensue, if the act is construed so as to include actions in this court. When the meaning of a law is doubtful, the argument from inconvenience has great weight; but when the meaning is clear, it is the duty of judges to construe it according to its intent, without regard to conse-

quences. This is the duty of judges in all countries; but particularly in this country, where the legislature is convened at least once in every year, so that there are frequent opportunities of removing inconveniences.

It is enacted in the 1st section of the act, that it shall be lawful for either party, in all civil actions or suits brought or to be brought, *in any court of this commonwealth*, to enter at the prothonotary's office, a rule of reference, &c. It is impossible to make use of language more clear or more comprehensive. Nor can any good reason be assigned, why the city and county of *Philadelphia* should have been distinguished from all other parts of the state, with regard to the operation of this law. However people may differ about its policy, it must have been intended by the makers as a public benefit. It would therefore have been an unpardonable partiality in them, to exclude the suitors of any court from its advantages, and particularly the suitors of a court in which the most important causes are decided. This act appears to have been drawn in great haste, and is not perfectly consistent. Obscurities and difficulties will be found in the subsequent parts; but nothing of sufficient weight, to take off the force of those general words in the 1st section which define the objects of the law. I shall take notice of several of those difficulties in considering the second and third questions.

2d. If bodies corporate, *defendants*, are not within the law, it must be because there is something in their nature inconsistent with its provisions; for they are not expressly excepted. It is contended that they must be excepted by implication, because they are excluded from the benefit of an appeal, which is given on conditions incompatible with the nature of a corporation. If the premises of this argument are well founded, the conclusion follows inevitably. It was the manifest intention of the law to give an appeal in all cases; and this no doubt from a firm resolution of the legislative body, not to violate the constitution of the commonwealth, which secures to the citizens the trial by jury. It is to be examined then, whether corporations being defendants are, excluded from an appeal? The 11th section gives an appeal under certain rules, regulations, and restrictions, one of which is that the party appellant shall enter into a recogni-

sance, the nature of which, in case the defendant appeals, is thus described in the 13th section. " He shall enter into a " recognisance with one or more sureties in the nature of " special bail, the conditions of which shall be, that if the " plaintiff shall obtain a judgment for a sum equal to or grea- " ter, or a judgment as or more favourable, than the report " of the arbitrators, the said defendant shall pay all the costs " which shall accrue before the arbitrators, or before the " Court of Common Pleas, together with the sum or value " of the thing awarded by the arbitrators, with one dollar a " day for each day which shall be lost by the plaintiff in at- " tending to such appeal; or in default thereof, shall surren- " der the defendant or defendants to the jail of the proper " county, &c." It is very clear, that one of the alternatives in this condition is not applicable to a corporation, which is not a natural but a political body, incapable of being surren- dered or imprisoned. The members of a corporation indeed are natural bodies, but subject to constant change. Those who are members to day, may cease to be so to-morrow. In suits against corporations, none of the members are respon- sible personally, nor can they be held to bail. The object of the suit is to obtain redress from the funds of the corporation, and the execution goes against those funds only. I agree therefore with the defendants' counsel, that the form of the recognisance is not applicable to a body corporate *defendant;* but from this I draw a conclusion different from theirs. The appeal is to be construed liberally, because it is in support of the constitution. I do not infer that the defendants can have no appeal, but that they may have an appeal without entering into any recognisance. This construction is more consistent with the general intent of the law, than to say that a corpo- ration, when plaintiff, may compel their adversary to an arbi- tration, but when defendant, may submit to an arbitration or not at their pleasure. It could not have been the intent of the law that they should enter into an obligation, to be void on doing a thing which was impossible to be performed. It is fair therefore to conclude that they shall be exempt from such obligation. I proceed to the third question. To what court is the appeal to be made?

The 11th section declares that if either party shall be dis-

satisfied with the report of the arbitrators, he shall have an appeal to the *Court of Common Pleas of the proper county;* nor is there any part of the act which gives an appeal to any other court. The 12th and 13th sections, which direct the form of recognisance in case of an appeal by plaintiff or defendant, are in conformity to the 11th section; they speak of costs in the *Common Pleas* in consequence of the appeal, but not a word of costs in any other court. Where then shall we find authority for giving an appeal to any other court? It is not to be seen in the law. Why this is so, I know not; and it is certain that the appeal to the Common Pleas in case of actions which were depending in the Supreme Court, will be attended with inconveniences. The 10th section directs the arbitrators to return their report to the prothonotary, that is, as I understand it, to the prothonotary of the court in which the rule of arbitration was entered. The prothonotary is to enter the report in his docquet, which from the time of such entry, to use the expression of the law, is to rank as a judgment. The 11th section directs the party appellant to enter his appeal with the prothonotary of *the proper county*, with the recognisance of bail, within fifteen days from the entry of the report of the arbitrators *in his docquet*, otherwise the prothonotary may issue execution. Here is an inconsistency; for in actions depending in the Supreme Court, the report is to be entered in the docquet of the prothonotary of the Supreme Court, and not in the docquet of the prothonotary of the county. To give efficacy therefore to this part of the law, the appeal must be entered within fifteen days from the time the report is entered on the docquet of the Supreme Court. It has been remarked too, that there is no provision for sending down the record from this court to the Common Pleas. This however may be got over; for if the cause is to go there, we have power to send the record, without an express provision. Other difficulties have been suggested, which it is needless to enumerate. It is to be hoped they will be removed by the legislature. At present we are called upon to decide to what court the appeal lies. Finding it given to the Court of Common Pleas, and not to any other court, I am of opinion that it can be made to that court only.

It follows that the rule to shew cause why the report of the arbitrators should not be set aside, must be discharged.

Rule discharged.*

---

*Philadelphia,*
*Thursday,*
January 11th.

---

* The provisions of the law upon which this case was ruled, have in many respects been altered by " an act to regulate arbitrations," passed the 19th *March* 1810. By the 11th section of this act, the appeal lies to the court in which the cause was pending at the time the rule of reference was entered.