Rogers, J.
The plaintiffs have issued a foreign attachment, and have attached, in the .hands of Ralston and Lyman, as garnishees, certain property belonging to the defendants. On motion, the following rule has been entered. Rule on the plaintiffs to show cause of action, and why the attachment should not be dissolved, on the ground that.it has issued against a foreign corporation. Cause of action has been shown by the plaintiffs, so that the single question is, whether a foreign corporation is within the true intent and meaning of the laws regulating attachment, and particularly the act of 1705, entitled an act about attachments. In. order to sustain *176 the motion, it will be necessary for the defendants to show, that they are not embraced by the Words and spirit of that act, and in the commencement of the argument, I was immediately struck with the difficulty and confusion which arose from the plaintiffs’ being called on to show, that the foreign attachment was in this case properly issued. I felt at a loss to conceive why foreign corporations should be exempt from the beneficial provisions of those laws. The words of the act- appeared to be sufficiently comprehensive to embrace them, and they were in my apprehension within the mischief intended to be remedied. Corporations are artificial persons, 10 Mass. Rep. 92. They have the power to sue, and be sued, implead, and be impleaded, gra?>t or .receive, by their corporate name, and to do all other acts, as natural persons may. 1 Bl. Com. 475. The power of a corporation to sue a personal action is not restricted to corporations created by the laws of the commonwealih. 10 Mass. Rep. 91.
It is difficult to conceive, that if corporations are artificial persons,—if they can do all acts that natural persons may,—if they can sue within a foreign jurisdiction, why they should not also be liable to suit, in the same manner, and under the same regulations .as domestic corporations.- The reason why they have not been, in point of fact, more frequently sued, is given by Chief Justice Spencer, in 16 Johns. 7.
The process against a corporation, by the common lav/, must be served on its head or principal officer, within the jurisdiction of the sovereignty, where this artificial body exists. If the president of a -bank of another state were to come within this state, he would not represent the corporation here: his functions and his character would not accompany him, when he moved beyond the jurisdiction of the government under whose laws he derived his character. That this would be the case, when he was within the state on, business unconnected with the corporation, there can be no question; but where a corporation locates the president, or other officer within the state, for the express purpose of making contracts here, whether process served on him, would not' be sufficient, is a question which I shall not undertake to determine, because it does not necessarily arise. There is nothing, then, in the nature of a corporation to exempt it from suit. The difficulty arises from there being no person within the limits of the state on whom you can serve your process. .
With the multiplication of corporations, which has and is taking place to an almost indefinite extent, there has been a corresponding change in the law in relation to.them. There was a time, when it was supposed that no suit could 'be sustained against "them, unless upon an express contract, under the .seal of the corporation. It is now held, that they are liable in trespass, and in case, upon an implied contract. 7 Mass. 169. 7 Cranch, 299. 4 Serg. & Rawle, 16. 14 Johns. 118. This change in the law has arisen from a *177 change of circumstances, from that silent legislation by the people themselves, which is continually going on in a country such, as ours, the more wholesome, because it is’gradual, and wisely adapted to the peculiar situation, wants, and habits of our citizens.
The motion to dissolve the attachment, is made on the ground that the defendant is a foreign corporation, and, as such, is not within the act of 1705, nor liable to attachment by the custom, of London. The effect of sustaining the motion, will be to deny the plaintiffs, citizens of Pennsylvania, all remedy in this state, on a contract made here, and to deprive them of a special lien on the goods attached, it will be for the defendants, then, to show most clearly, that foreign corporations do not come within the intention of the laws regulating attachments.
When we consider the nurnber of corporations which now exist, their continual increase, the extent of their operations, the establishment of agents within this state for the express purpose of making contracts here, it is difficult to conceive a valid reason why they should be exempted from the operation of laws, which regulate the contracts of individuals and domestic corporations. They are not such favourites in courts of justice, as to claim an exemption on that ground.
The reason of the passage of the act of 1705, is set forth in the preamble to be, “That the laws of this government have/hitherto. been deficient in respect of attachments, so that the effects of persons absenting are not equally liable with those of persons dwelling upon the spot, to make restitution for debts contracted or owing within this province, to the great injury of the inhabitants thereof, and the encouragement of such unworthy persons, as frequently by absconding, make advantage of the defect aforesaid.”
In the third section, “ provided always, that no writ, of attachment. shall hereafter be granted against any person or persons’ effects, but such only as at the time of granting such writs are not resident or residing within this province, or are about to remain or make their escape out of the same, and shall refuse to give sufficient security to the complainant for his debt, or other demand, before he depart the said province.” -
It cannot, I think, be" reasonably doubted that-,corporations are within the words of the act. When the word person, is used in a statute, corporations as well as individuals are included.. As, where the inhabitants of a town are .bound to repair a bridge, or to pay taxes, corporations, as well as individuals, are liable.' 2 Inst. 697, 703. Cowp. 83. 5 Crunch, 61.
Are foreign corporations within the spirit of the act ? We are so to construe the act, as to suppress the mischief and advance the remedy. The mischief which the legislature intended to remedy was, that the effects .of persons, artificial or ,natural, who were absent, were not equally liable with those of persons, artificial or natural, dwelling upon the spot, to make restitution for debts con *178 fraeted, or owing within the proviriee. Foreign corporations and foreign individuals were placed on a better footing before the passage of the act, than domestic corporations or citizens of the state; for remedy whereof, the act in question was passed, enabling the court to compel an appearance by attachment of their effects within the state.
It may be- here proper to remark, that the act has been already construed to extend to persons, who have never been within the state, it has therefore the same application to corporations which are stationary, as to natural persons. Foreign corporations, it is true, ai;e necessarily absent from the state, but may have effects within it, and may contract and owe debts to citizens of this state, which they may be unable or unwilling to pay.
It is no answer to say, that this is a mere question of remedy; that the corporation may be sued in Massachusetts, as in this case, or in Europe or Canton, as the case may be.
But suppose suit should be commenced within a foreign jurisdiction, judgment, obtained, and execution issued, and,the company should prove insolvent, (and daily experience shows us that this is no improbable supposition,) what would be the remedy against their effects within this" state? Relief must depend entirely on the laws of the foreign government. If there was a power in their courts to compel an assignment, or to sequester their property, in and out of the state, there might be some remedy, however inadequate, to the creditor. . I cannot bring myself to believe, that the legislature ever intended that citizens of Pennsylvania, who had the property within their grasp, or a lien upon it, should be deprived of that lien, and depend for the payment of their debts on the laws of á sister state, or of a foreign government, and the more especially am I unwilling "to adopt, that construction at this time, when this contract, was máde, and contracts are daily making by foreign corporations, within the limits of this state, and under the jurisdiction of this court. If this were a case of doubtful construction, the argument ab inconvenienti, would be exceedingly strong, and would go far with me, in the determination of the case.
But it is said that corporations are. not within the act, because it is provided, “That if the plaintiff in the attachment obtain a verdict, judgment, and execution,- for . the money and goods, in the garnishee’s possession, yet the defendant in the attachment may, at any time before the money be paid, put in bail to the plaintiff’s action, upon which the attachment is grounded, whereby the garnishee will and shall be immediately discharged.”
Granting, merely for the sake of the argument, "that “ bail to the. plaintiff’s action,” as used in the act of assembly, means special bail only, and agreeing; as I certainly do, that a corporation cannot enter special bail, yet it-by means follows that the effects ©f foreign corporations cannot be attached, under the act of 1705.
This point, has undergone a judicial" investigation, in the casé of *179 Carpentier v. The Delaware Insurance Company, 2 Binn. 264. It was there contended, that the plaintiff could not enter a rule of reference, because the defendants were a corporation. That in every case intended to be referred, an appeal was given; but that in no case could it be obtained by the defendant, without entering into a recognizance conditioned to pay the debt and costs, or to surrender him to jail. That a corporation could not give such a recognizance, because it could not be surrendered.
From this it was inferred, that corporations defendants were not' within the act, in the same manner, and by the same arguments as it is here contended that corporations ’are not within the act of 1705, because bail to the plaintiff’s action, means special bail, and that they cannot enter such bail. The court, however, decided that the plaintiffs were not prevented from entering as rule of réference, which in effect decided the principal point in this case. If bodies corporate, say, the court, are not within the law, it must be because there is something in their nature inconsistent with its provisions; for they are not expressly excepted. It is contended, they must be excepted by implication, because they are excluded from the benefit of an appeal, which is given on condition-incompatible with the'nature of a corporation. It is clear, says the Chief Justice, that one of the alternatives of this condition is not applicable to a corporation, which is not a natural, but political body, incapable of being surrendered or imprisoned. I agree that the form of the recognizance is not applicable to a body corporate, but from this I draw a different conclusion from them. 1 do not infer that .the defendant can have no appeal, but that they may have an appeal without entering into any recognizance.
In this ease, I do not infer that the effects of foreign corporations cannot be attached, but should infer, were it not for considerations which I shall state, that the attachment should be-dissolved by entering an appearance without bail.
In Pennsylvania, a foreign attachment will not lie against an executor, as defendant, for a debt due from the testator; though the custom of London seems different. 1 Serg. on Attachment, 61. 2 Dali.
It will not lie in Pennsylvania, because it would interfere with the order prescribed for the payment of debts. This is not a consideration in England, the executor having full power over the assets of the deceased, their laws differing in that respect from ours. Heirs, executors, and administrators cannot be arrésted and held to bail, the demand being not on the person, but the assets of the deceased. 1 Sell. P. 45. .Although they cannot be held to special bail, yet it appears that by the custom of London, a foreign attachment will not lie; against the executors, as defendants, for a debt due-from the testator. 1 Serg. & Rawle, 61.
The case of Fitch v. Ross, 4 Serg. & Rawle, 564, decides,— That the death of the defendant, in a foreign attachment, after *180 final judgment, does not. dissolve the attachment.; and yet, in the language of the counsel, the appearance of jRoss, by entering special bail, was rendered impossible by a superior power.
I ci'e these cases for the inference which necessarily arises, that neither the issuing of a foreign attachment, nor its dissolution, depend upon the ability of the defendant in the attachment to enter special bail.
Taking the point as now settled, that foreign corporations are liable to a foreign attachment, the next question which claims the attention of the court is, the manner in which the attachment may be dissolved. As a matter of practice, and one about which a difference of opinion may exist, it is better that it should be put at rest.
In my view of this case, it is a consideration of some weight, that the object of the laws regulating attachments, is merely to compel an appearance by the debtor. 1 Serg. on Att. 1. Carth. 26. 4 Serg. & Rawle, 564.
“ Foreign attachments,” says Justice Duncan, in the case of Fitch v. Ross, 4 Serg. & Rawle, 564, is a “peculiar process to compel the appearance of the non-resident debtor, by distress and sale of the property attached.” By the attachment, the creditor obtains a special lien on the effects of the absent debtor, of which lie can only be deprived by the appearance of the debtor, which js the great object of the'act. When a. foreign corporation or debtor enters an appearance to the action, they are placed upon the same and no worse footing than a resident debtor. They submit themselves to the jurisdiction of the courts of this state, in which the merits of their cause, will be fairly examined.
The motion to dissolve is to relieve the defendants from the effects of the lien, and it would he unreasonable to do so, without giving the plaintiffs adequate security. If the' bail to the action, in the act, means special bail only, then the only remedy for the corporation would be by scire facias ad disprobandum, debitum, on the 4th section of the act. i his, however, in some cases, would not be an adequate relief, and would not be such a fair and equitable construction of the act as we are bound to give.
As a foreign corporation cannot from their nature give the plaintiff security by the body, the highest security known to the law, 4 Serg. & Rawle, 564, it is but reasonable that the security should be dissolved, upon their giving the next best security, which is security for the debt, which may be.found to be due, together with the costs of suit.
- Although the terms used in the act,—“ bail to the plaintiff’s action,”—ordinarily mean special bail, yet'am I so disposed equitably to construe the act, as to suit the nature of the corporation, which seeks the dissolution of the attachment.
The putting in special bail, is one of the modes of dissolving an attachment, yet it is not the only mode, nor is it so expressed or *181 intended in the ant. -The legislature, say the defendant, may dissolve the attachment, by bail to the plaintiff’s action..
The court will inquire into the justice and extent of the plaintiff’s demand, and if no'sufficient cause of action be shown, they will discharge the property altogether. 1 Dall. 154. An attachment will be dissolved, where the defendant was not an object of the foreign attachment laws. 1 Dall. 152. Or. where the property was not liable to a-former attachment. 1 Dall. 354. 2 Dal. 73. Or where the court had not jurisdiction. So, under the custom of London, an attachment will bé dissolved where the defendant surrenders himself. 1 Com. Dig. 154.
These cases show the latitude of construction adopted by the courts, in relation to the lawns regulating attachments. In my view of this case, the construction which the court have given the act is'altogether in favour of the cefendant, enabling him to repossess himself,of the property, upon doing common justice to the plaintiff; enabling him to have his claim examined by a court, competent in all respects to do exact and equal justice to all the parties.
The ground upon which the Chief Justice in the case of Carpentier v. The Delaware Insurance Company, gave the appeal to the corporation without bail, was, that the appeal was to be construed liberally, because it is in support of the constitution, which secures the trial by jury. This reason not applying to this case, we are of the opinion that the defendants take nothing by their motion, but that upon their giving bail for the payment of the debt, interest and costs, on the affirmance of the judgment against the corporation, the court will permit the defendants to appear, and on motion will dissolve the attachment.
The corporation cannot appear except by leave of the court. In Carth. 26, it was agreed by all that a foreign attachment in London, is to no purpose but to compel an appearance of the defendant in the action; for if he appear vyithin a year and a day, and put in bail to the action, the garnishee is discharged, but without bail, they will not compel an appearance.
Duncan, J.
This is a rule to show cause why the foreign attachment issued in this case ought not to be dissolved.' It is quite clear, that if it is not authorized by law, and ought not to have issued, the court on motion is bound to dissolve or quash it; and it is equally clear, that if this be a corporation of the state, foreign attachment would not lie: so that the true question is, does a foreign attachment, by the laws of Pennsylvania, lie against a foreign corporation, which by attaching their effects can compel them to appear, in order to dissolve it, by entering special bail. I do not think it a question of such great magnitude as has been represented, or that such mighty mischiefs will arise from deciding that the effects of a-corporation created by a sister state cannot be attached. Inconvenient it may be to the party entering into a *182 contract with a foreign corporation to he obliged to apply to the forum'of another state for justice; but the man who contracts with a foreign corporation takes his risk of that, and judges for himself whether that inconvenience is or is not counterbalanced by the lesser premium, and contracts according as in his judgment the scales of advantage or inconvenience preponderate. I mention this, not because I think the courts ought to be governed by considerations of this kind, where a law is plain and the uniform construction has prevailed for more than a century. If the evil of dealing with those corporations, from the impossibility of bringing them before our forum, be such as is represented, (and I am far from denying that, it is a great inconvenience,) the legislature alone can cure it. It is beyond the powers of courts of justice to grant relief, unless such relief is authorized by the laws of the land. The legislature is now in session, and if the evil calls so loudly for redress, let the legislature give it, but not us,—whose province it is to decide on the interpretation of laws,—make them as we go along, put them on the judicial anvil, and with the judicial hammer give them a different shape, and fashion them according to our own notions of right, and wrong. I, observe, by the papers of this morning, that the whole subject is before the legislature, and a bill .read in the senate concerning agreements of insurance companies, not authorized by the laws of the state: let us act anticipate them.
This question is to be decided exclusively on our own statutes. The foreign attachment, though partly borrowed from the custom of London, is not a process known to the common law,—is not a process by which, according to that law, corporate bodies'can be brought into their courts; and I think it was put fairly by the counsel of the plaintiffs, on the only plausible ground,—the enactments of our own state. The process of foreign attachment is founded on. the act of 1705, a law passed' in the infancy of the colony, when corporations and monied institutions were unknown in the whole of the American provinces. The provisions of the act were therefore not intended for those creatures of the law, invisible, intangible, incorporeal and imaginary, but for natural persons, with whom in their natural character the primitive people of the colony, had dealings. But if I could find any terms in the act, or if by any, the most liberal construction, I could so extend the act as to draw these creatures of the law within its provisions, I would willingly do so, for I acknowledge the inconvenience. But as in my conscience' I do not think this within the view of the legislature, and as I think it inconsistent with the whole letter and structure of the act, 1 cannot alter the law, or mould it anew to meet the emergency.
The foreign attachment was iatended to compel bail to be put in by an absent debtor, by impounding the property, if found within the jurisdiction. It is not special bail, because bail to the action *183 is special bail; nor common bail, for that would be nugatory. It is not bail for the debt. The declared object of the law, was to make persons absenting themselves equally liable with those residing in the state. It is not security pledges for the return of the goods, as in replevin, nor stipulation in the admiralty courts, but bail to the action, which is known to every language, and every layman, to be special bail by recognizance for the surrender of the body of the defendant. The practice has always been in conformity to this. The attorney indorses, as he does on the capias—take bail in such a sum, and this very writ is so endorsed bail in four thousand dollars. It, was not so first Stated by me, in Fitch and another v. Ross, “ that it was a peculiar process to compel the appearance of non-resident debtors, by the entry of special bail;’’ for the law had always been so laid down. Inquiry into the cause of action was always made by the court, exactly as on a capias. 1 Dall. 154. Id. 218. And, in the note to the first case, it is said, in attachment the defendant being absent cannot enter a common appearance, or give a warrant of attorney for that purpose: therefore the court cannot direct common appearance, as in a capias, but must dissolve the attachment, if no cause of special bail be shown. And, in 1 Dall. 375, President Shippen, better acquainted with the practice in foreign attachments than any man living, says, “The attachment law, and all proceedings under it, suppose the defendant to be an absent person, and he has no day in court until-he enters special bail, and thereby dissolves the action; or comes in afterwards, when the money is recovered from the garnishee to dissolve the debt, which is done by scire facias ad disprobandum debitum. In either of which cases, he puts the ’plaintiff upon his legal proof of the demand, and is admitted to make full defence.” It does not therefore accord wilh legal ideas, that he should have the opportunity of trying the cause on the writ of inquiry, and also another opportunity of trying or entering special bail. And, by the present Chief Justice, (in 2 Serg. 8? Rawle, 224,) it was said the attachment transfers no property to the plaintiff: its object is to com-pel the appearance of the defendant: that being attained by the entry of special bail, the attachment is dissolved. So-likewise, he says, the attachment would be dissolved by the death of defendant before judgment, though no bail was entered: so that there is nothing of novelty in the opinion in Fitch v. Ross. It was a statement of the principles settled by decisions on the law of attachment. The lien by attachment continues until the entry of special bail. The action is a bailable writ: nothing but special bail can dissolve it, and it can always be dissolved on special bail. When the hail is given, it proceeds as a personal action by capias ad satisfaciendum against principal, and scire facias against special bail. 1 Dall. 248. There is no special fieri facias to be laid on the goods attached; this is unknown to the law, where the defend *184 ant appears and enters special bail. Thus the plaintiff obtains all that the law intended—security of the body of the absent debtor." A foreign attachment until special bail is entered, and an appearance, is a proceeding in rem, and is not extended further •than the property attached. Where special bail is entered it is a personal action. 1 Dall. 265. It is agreed by all, that a corporation cannot be held to special bail: it cannot be arrested by its artificial, intangible, imaginary body: the sheriff cannot, lay his hands on it: it cannot be committed, or be delivered to the bail on a string, which when he. pleases he can draw in: it cannot be surrendered to prison: it is not entitled to the benefit of the bread law: it cannot be discharged under the insolvent laws, nor be a bankrupt. The entry of special bail is an appearance in person. Now, it is a maxim of law, that a corporation cannot appear in' court, but by attorney, because if the members appear, (for the corporation cannot appear in court, being invisible,) the court cannot judge whether ail the members appear. A suit against a corporation is always by original out of chancery. The plaintiff cannot proceed by bill, nor declare against the corporation, as in the custody of the marshall. A corporation cannot be essoigned, because an essoign is in excuse of the personal appearance of the party. Quotation from ancient authorities would be tedious. I therefore refer, for the learning on this subject, to 1 Kyd on Corp. 270. In proceeding against corporations, the process is served on the head officer of the corporation; and, if the defendants do not appear by attorney, the next process is by distringas, and the sheriff may. distrain the land and goods which constitute the stock of the corporation; and, if they háve nothing in land or goods, there is no way to compel them to appear, either in law or equity. If they have, the plaintiff may compel them by distress infinite until he has raised his debt from the issues. Small is sues are at first made, but, if the corporation persist, they are renewed until the whole demand is satisfied. Summons personally served, the attachment of goods, and the distress infinite, is the only method of proceeding against corporations. 1 Tid’s Frac. 107 to 116. There is, in my humble judgment, demonstration in the act of 1705, and every line of it, that natural persons were alone intended and alone comprehended; for if corporations had been intended, why not some other provision for appearing and dissolving that, than-requiring that which they could not give, and which would not be received—special bail. The entry of the bail is the only condition on which the absent debtor can bring himself into court, or obtain a status in curia in order to defend the action. It is true he may have, after his goods are sold, the scire facias ad disprobandum debitum; but though he should succeed, his property during all that intervening time is locked up, and if it be a debt attached, he loses the interest during the pendency of action. The legislature intended to give to all debtors whom they subjected to *185 the foreign attachment, the right to dissolve it on entering special bail. No other condition can be imposed by the coui’t: no other bail can be taken. It would seem to follow as a necessary consequence, that the debtor who could not give special bail, because it would not be taken, was not the subject of it. The-debtor corporation is not such an entity as can enter special bail: it cannot be ai’rested, because it is invisible: it cannot be delivered in bail, because it cannot be in custody or surrendered. All whose effects are attached can dissolve it by entry of special bail. All who can appear in person and give security for the forthcoming of their bodies, are the subjects, and the only subjects of foreign attachment. The case put of a feme sole trader, who cannot be ai'rested, is foreign to the pux-pose: if she contract debts in another state, and her person be found within the jurisdiction, she may be arrested, or her goods may be attached. The case, in my view of it, only requires this simple exposition. It is .needless to inquire into the custom of London; but, if we did, we find that the goods of a corporation cannot be attached by foreign attachment: it is not within the custom. The-action is against a corporation aggregately, in its corporate character: such corporation is certainly not a person: a person who could be arrested, if found within the jurisdiction,— a pei'son subject to capias and impi'isonment. It can neither be manually arrested, (and a manual arrest is the only legal one,) noi’ committed, nor discharged on bail.' The case of M‘Quin v. The Middleton Manufacturing Company, (16 Johns. 5,) is this case in terms. The framers of the New Fork law had the same object in view as our legislature of 1705. Its enactments, so far as respects the subjects of the act, are substantially in the same words; and it was there held, that the legislature contemplated the case of a liability to arrest, but for the circumstance that the defendant was out of the jurisdiction of the court, and that the act, in all its provisions, meant only that the attachment should go against ixatux’al not artificial or mere legal entities. The first section speaks of persons, and thi’oughout the act only natural persons were intended. It is not now necessary to decide whether a corporation can be sued out of the jurisdiction of the state which created it. I think the reasons of Chjef Justice Spencer are very strong, that the process must be served on the head or principal officer of the corporation within the jurisdiction of the sovereignty where this artificial body exists. The act of 1817 shows this to be the view which the legislature took of the matter, and proves that the property of a corporation cannot be seized by a foreign attachment: it changes the whole mode of proceeding against corporations: its substitution, summons, is more simple and expeditious than the pei-plexed. and intricate one by summons and distress, the only remedy then known. It gives a summons, but inquires a personal service on the president or other principal officer of the institution. That is the process, but it is personal, and must be served person *186 ally on certain designated officers of the corporation. It is a personal action ah initio, and not a proceeding in rem. It does not give a process on which bail can be demanded or goods attached, to compel a party absent, and which cannot personally be served within the jurisdiction, to give bail to the action. And what conclusively proves that foreign corporations, whose head might accidentally be found within the jurisdiction, are not the subject of the law, is the provision for execution; that is, “That any execution so issued and directed to the sheriff, shall be served by the officer going to the banking-house, or other principal office of the corporation, at the usual office hours, and demanding of the president, or chief officer, cashier, treasurer, secretary, or chief clerk of the corporation, thd amount of the execution, if the officer can be found; and. if the same is not forthwith paid, then the sheriff or other, officer is authorized to levy on any personal property, &c. of the corporation.” The provision for execution shows what corporations were contemplated by the legislature. The act does not look to a foreign corporation, but to one whose house of business is within the jurisdiction. It is intended for our home-made corporations, of which Pennsylvania is an extensive manufacturer, and not for exotic plants, articles of foreign origin and growth. But if it related to other corporations than those located within our own border, the commencement of this action must be by personal summons and personal service; for there can be no outlawry of a corporation. This proceeding against other than natqral bodies, is as unwarranted by acts of assembly as it is unauthorized by the common law; and I cannot bend the laws to satisfy public convenience and still public clamour, if such there be; nor modify its provisions, or coin a new course of proceeding, to meet an exigency not provided for.
The arguments of the counsel of the plaintiffs, addressed to the legislature, might be very convincing to show that the altered state of society required an alteration of the law; but these are not topics properly addressed to a judicial tribunal, whose province is the interpretation of the laws, here the written laws, the lex scripta.
There was an instance put by the counsel, and put with force,— the case of a feme sole trader, exempt from distress by our laws; but it is readily answered: if she enters into a contract-in another state, and can be found there, she is liable to arrest; and if she cannot be found, and there is such law as our foreign attachment law, her goods found within the jurisdiction might be attached.
If this process does not lie, the plaintiffs have the right to call for its dissolution, and no terms can be exacted from them by the court not prescribed by the law. What is this court to do ? We must either dissolve the attachment, quash it, as having issued irregularly against a party not subject to it, or . require special bail for the surrender, not of the members of the corporation, but of the *187 body politic, or exact a stipulation unknown, take a recognizance unknown for the return of the goods: for such recognizance stipulatory is unknown in our law, and certainly is any thing else thán bail to the action. When the act of 1817 passed, it was not imagined that courts of justice could change the established course of proceeding on account of any inconvenience. And if it be so, that to change it is a matter of judicial discretion, or inherent power of the court, where is this to end? It may be exercised by the most inferior jurisdiction, by a justice of the peace, who by this act is authorized to proceed against corporations. This, in every view which I can take of the question, would not be the interpretation of existing laws, which is one province of this court, but making laws, which is a power exclusively vested by the constitution in the legislature. This power I dare not exercise. Would the counsel of the plaintiffs expect this from us, and admonish us against waiting for legislative interference? But my Brothers’ views of this subject differ from mine, and considering it a case provided for by our statute law, have come to a different conclusion; and, if .iti's, their conclusion is a just one and my opinion erronéous. Though I differ from them with all respect, and ought to distrust myself, yet when my opinion is so fixed as it is on the construction of these laws, I must be governed by it, and decide according to the dictates of my own reason and judgment.
I am of opinion that the motion should be granted, and the writ quashed or dissolved.
Rule discharged.