## NASH v. THE RECTOR, CHURCHWARDENS AND VESTRYMEN of the EVANGELICAL LUTHERAN CHURCH, in the town of Swedesborough, near Raccoon Creek.

December 7, 1835.

*Rule to show cause why the service of the writ of summons on the rector should not be set aside.*

A foreign corporation cannot be summoned by a service on its head or chief officer, who, at the time of service, may be within the territorial jurisdiction of this court. Such service is bad, as well under the act of March 22d, 1817, as at common law, and will be set aside on motion.

THIS was a summons returnable to August return day of June term 1835. The sheriff's return was, "summoned, by serving a copy of this writ on the rector of the church personally." The case came up on a rule to show cause why the service of the writ should

(*a*) See Jewell *v.* Howe, 3 *Watts's Rep.* 144, reported after this decision was made.

[Nash v. The Rector, &c.]

not be set aside.    The defendants were a corporation, under a charter of the state of New Jersey, the town of Swedesborough being in that state.

*M'Call* and *Biddle*, for the rule, contended, 1. That the rector is not the principal officer of the corporation.    2. That the service of a summons against a foreign corporation, even upon the principal officer, is not good in Pennsylvania.    3. That the application to set aside the service is the proper course of proceeding.   They cited the act of assembly of the 22d of March 1817, *Purd. Dig.* 166; 8 *Serg. & Rawle* 517, 521; 15 *Serg. & Rawle* 176, 185; 16 *Johns. Rep.* 6; 3 *Day's Conn. Rep.* 441; 1 *Hall's Rep.* 497, 575; 1 *Tidd's Prac.* 562, 189, 190.

*Tyson* and *Randall, contra*, contended, 1. That the sheriff's return is conclusive, in the present stage of the cause.    2. That the rector is the chief, or principal officer of the corporation.    3. That the act of the 22d of March 1817 comprehends *foreign* as well as *domestic* corporations.    They cited *Watson on Sheriff* 72; *Angel & Ames on Corp.* 227, 57, 209; 2 *Wash. C. C. Rep.* 429; 1 *Strange* 612; 3 *Yeates* 251; 6 *Day's Conn. Rep.* 428; 2 *Arch. Pr.* 98, 92; 1 *Tidd's Prac.* 116; 2 *Gall. Rep.* 105, 126; 1 *Stark. on Ev.* 412; 1 *Bos. & Pul.* 43; 3 *Day's Conn. Rep.* 24; the act of the 20th of March 1724, about arrests, *Purd. Dig.* 56.    See also 3 *Barn. & Ald.* 244, as to the question, who is the principal officer?

The opinion of the Court was delivered by

PETTIT, *President.*—In a suit against a corporation, the process, at common law, must be served on the head or principal officer.    If after such service the defendants do not appear at the return of the writ, by attorney duly appointed under their common seal, the next process is a *distringas*, under which the sheriff may distrain the lands and goods which constitute the common stock of the corporation.    If they have neither lands nor goods, the courts have no power to compel them to appear.  1 *Tidd's Prac.* 116.   The service of a summons on the head or chief officer, must also be within the jurisdiction of the sovereignty where the artificial body exists.   M'Queen *v.* The Middletown Manufacturing Company, 16 *Johns. Rep.* 5.   Admitting, then, the rector to be the head of this corporation,

[Nash v. The Rector, &c.]

the service of the writ could not be sustained at common law. This view of the case would dispose of the whole question, and require no aid from the circumstance, that, inasmuch as the defendants decline to appear by attorney, and it is agreed that there is nothing in Pennsylvania upon which a *distringas* could operate, the summons must, necessarily, even without disturbing the service, prove abortive. But it is contended that the plaintiff is not obliged to struggle with the difficulties of the common law, and that the act of assembly of the 22d of March 1817, entitled "an act relative to suits brought by or against corporations," applies to this case.

The 1st section provides, that "suits may be brought against corporations, by their corporate names, before any court or magistrate of competent jurisdiction, by summons, which may be served on the president or other principal officer, or on the cashier, treasurer, secretary, or chief clerk of such corporation ;" thus giving a wider scope for the service of a summons than existed for the service of process at common law.

The 2d section made an important innovation, by enacting that, "if any corporation, summoned as aforesaid, shall not appear by their officer, agent or attorney, at the time mentioned in said summons, then, or at any time afterwards, on proof of the service of the summons, by the oath or affirmation of the officer serving the same, judgment by default shall be rendered against said corporation, for the sum which, to the court or magistrate, shall appear to be due."

The 3d section, after distinguishing between the form of execution issued by a magistrate and the form of that issued out of any court, declares, that, "any execution so issued, and directed to any sheriff, constable or other proper officer, shall be served by the said officer going to the bankinghouse or other principal office of the corporation, at their usual office hours, and demanding of the president or other chief officer, cashier, treasurer, secretary or chief clerk of said corporation, the amount of said execution, with legal costs ; and if the same is not forthwith paid in lawful money, or if no person can be found on whom demand may be made as aforesaid, then such sheriff, constable or other officer, is hereby authorized and required to seize any personal property of said corporation, sufficient for the debt, interest and costs ; but if no sufficient personal property can be found as aforesaid, then, in case of execution out of any court, the levy may be on the real estate of the corporation ; and in case

[Nash v. The Rector, &c.]

of execution issued by any magistrate as aforesaid, where no suffi-
cient personal estate can be found as aforesaid, the plaintiff may file
in the court of common pleas a transcript of the judgment, as in
other cases ;" and concludes with a proviso particularly relating to
banking companies.

These provisions are not in the slightest degree modified by any
subsequent clauses of the act, and when applied to corporations exist-
ing within the borders of our own commonwealth, are clear, intelligi-
ble and effective ; but when attempted to be extended to the case
of a foreign corporation, whose officer happens to be within our
jurisdiction at the time of serving the summons, must be found to be
strained, perplexed and inadequate.   The legislature intended the
judgment by default, under the 2d section, to be the foundation
of an execution under the 3d, and yet the mode pointed out of
serving the execution, can be pursued only in relation to a corpora-
tion within our own state.   If the legislature contemplated giving
to the courts authority to render judgment by default of appearance,
against a foreign corporation, upon the service of a summons, merely
upon the *person* of its officer found within our jurisdiction, it is rea-
sonable to presume that they would have employed unequivocal
terms to express their purpose.   Such a departure from well estab-
lished principles ought not to be inferred from language which
plainly has a different meaning, and to which full and complete
effect can be given, without distorting it from its obvious interpreta-
tion.   The object of a plaintiff in obtaining such a judgment, would,
in most instances, be, to transfer an exemplification of the record of
it into the jurisdiction of the sovereignty in which the corporation
exists, and thus to carry it into effect.   Whether such an experiment
would be sanctioned in any other state or jurisdiction, it is useless
here to inquire ; but I should deem the act of a court in Pennsyl-
vania, by which the question could be presented, as the arrogation
of an authority not conferred, and not intended to be conferred by
our own legislature.   The conclusion then is irresistible.   Unless
such a judgment could be rendered on default of the appearance
required, the act of the 22d of March 1817 does not help the present
plaintiff.

This question has never perhaps been authoritatively determined.
In 1822, the point was seriously agitated, whether the act was not
to be restricted to *banking* institutions, and though this idea was,
upon sufficient grounds, rejected by the supreme court, yet Chief

I.—L

[Nash v. The Rector, &c.]

Justice Tilghman, in delivering judgment in the Washington and Pittsburgh Turnpike Company *v.* Cullen, 8 *Serg. & Rawle* 517, uses language, which, proceeding from a Pennsylvania judge, I think, plainly shows that he did not contemplate, as included within the act, corporations beyond the limits of our own state. The exact question, however, was not suggested. But in Bushel *v.* The Commonwealth Insurance Company, 15 *Serg. & Rawle* 183, Judge Duncan, though he was overruled on the main point of the cause relative to a foreign attachment against a corporation, yet pronounced, without dissent, the opinion, for which he gave his reasons somewhat at large, that the act of 1817 does not comprehend foreign corporations.

An intimation of sentiment has therefore been thrown out by one, and a decided expression of views deliberately uttered by another eminent judge, in support of the opinion now delivered.

I have had some hesitation upon the point, whether the court should not postpone pronouncing their determination until called upon to render judgment on default of appearance, under the second section of the act, but upon reflection, it is considered that as the service of the writ cannot be sustained, either at common law or under the act of assembly, the person on whom the service is returned to have been made, is entitled to a decision of the question upon the present application.

Rule absolute.