Allen, J.
The preamble of the act directing the method of proceeding- against absent debtors recites, that creditors have experienced great difficulties in the recovery of debts due from persons residing without the jurisdiction of the commonwealth. Under this law, the plaintiffs in the court below sued out their foreign attachment against the bank of the United States; and the question is presented, whether the attachment lies against this corporation of another state ?
The remedy given by this statute is an innovation upon the common law, and, as has been frequently observed by the judges, liable to great abuse. The legislature, foreseeing that an ex parte proceeding of this *585 kind might be abused, have been careful to regulate it, and to provide sufficient security to indemnify the absent defendant for any damage improperly sustained. This court, in Kelso v. Blackburn, 3 Leigh 306. held that the mode pointed out must be pursued, and the tions of the statute strictly conformed to. But though the court is watchful in exacting a compliance with the terms of the law, this does not change its character. The sfatute is remedial. It gives a remedy where none existed before. This is admitted by judge Carr, who always looked upon the proceeding with jealousy. He remarks in Kelso v. Blackburn, that the law was founded on the necessity of the case, lest there should be an absolute failure of justice. If the statute was necessary to suppress a mischief, and is remedial, the cases to which it extends must be ascertained by those rules of construction which are applied to the interpretation of all remedial statutes. Such statutes are to receive a liberal construction : they are to be so construed as may best answer the intention of the maker; and where a statute introduces a new remedy, the interpretation should be such as will tend to suppress the mischief and be in furtherance of justice. In cases arising under this act, it has received a liberal construction and been extended beyond the letter. The preamble mentions the difficulties experienced in the recovery of debts due. This would seem to confine the remedy to the case of a debt then payable, and for the recovery of which an action could then be maintained if the defendant were within the commonwealth. But in Williamson &c. v. Bowie &c. 6 Munf. 176. it was decided that the attachment would lie to secure a note executed by the absentee and endorsed by the attaching creditor, although, at the time of suing out the attachment, the note had not been paid and was not then due.
The first section requires an affidavit of nonresidence, or of ineffectual enquiry at the usual place of abode, *586 Taking this in connexion with the fourth section where the act speaks of the defendant’s returning and appearing openly, it might be argued from the literal import of the terms, that the remedy was confined to those defendants who had at one time been residents and subject to the jurisdiction of the commonwealth. But in Peter v. Butler, 1 Leigh 285. it was determined, that a claim arising on a contract of bailment made out of Virginia, against a nonresident, is a claim for debt for which the foreign attachment lies; thus applying the remedy where the defendant had never been subject to the jurisdiction of the commonwealth, where the contract was made without the state, and where the plaintiff’s demand was not liquidated, but sounded in damages.
It has been suggested that the law can be applied to those cases only, where the defendant would, if within the jurisdiction of the commonwealth, be liable to be sued; and that this cannot be predicated of a foreign corporation, for it can have no legal existence without the bounds of the sovereignty which created it. The fact might be conceded, and yet the consequence does not necessarily follow. There is nothing in the act restricting it to defendants who could be sued if within the commonwealth. The law extends to all nonresidents. Whilst they continue without the state, they never could be subject to the jurisdiction of the commonwealth ; and the law was passed to enable the creditor to reach their effects, because they would not submit themselves to the jurisdiction of the state. And can it make any difference in the operation of the act, whether the jurisdiction of the commonwealth is prevented from attaching by the defendant’s remaining out of the state, or because he can never come within it ? If the defendant is a nonresident, (to whatever cause owing) so as to be without the jurisdiction of the commonwealth, and has effects subject to its jurisdiction, *587 the case is made out to which the law was intended to apply.
If this were an act to force an appearance,—to pel the defendant, by attaching his effects, to appear to an ordinary action, it might be contended with much force, that the act could apply to such defendants only as would be liable to suit if within the jurisdiction of the state. The law might be considered as ancillary to the ordinary proceeding, a mere substitution of one form of process for another; and being but an incident to the principal subject, ought not to be construed as extending to cases where without it the court could not take jurisdiction.
This was the difficulty in the cases referred to, decided in Pennsylvania and New York. In the former state they have no chancery court. The case of Bushel &c. v. The Commonwealth Ins. Co. 15 Serg. & Rawle 173. was a proceeding at law. It appears from the report of the case, that by their statute the defendant was authorized to appear upon putting in bail to the action. Natural justice demands that in all such laws a provision should be made to enable the absentee, on certain conditions, to appear and controvert the justice of the claim set up against him. This law did contain such a provision; but it was one of which the absent defendant, being a corporation, could not take advantage. A recognizance of special bail could not be acknowledged for it, as the condition to surrender the body was impossible. It was therefore insisted that the law could not be so construed as to embrace corporations. But even in that case the objection was overruled and the jurisdiction sustained.
The supreme court of New York in M’Queen v. The Middletown Manu. Co. 16 Johns. Rep. 4. gave a different construction to their statute against absconding or absent debtors, and held that the attachment authorized by that act did not lie against a corporation. The 23d *588 section of their act used the phrase “ every debtor who resides without the state.” These words, if they bad alone, would have comprehended corporations. But the court, taking the 23d in connexion with other sections of the act, held that natural persons only wereincltided. For this construction reliance w'as mainly placed on the 21st section, which provided that the debtor might supersede the attachment, upon giving security to appear and plead to any action of law or in equity brought against him in the state within six months. This supposed that the defendant would, if within the state, be subject to an ordinary suit. In requiring security to be given to appear and plead to any such action, the makers, it is to be presumed, meant to confine the remedy to such defendants as could place themselves in that predicament,—subject themselves to the jurisdiction of the courts. In the case of a foreign corporation, there was no person upon whom process could be served, and therefore no mode of instituting an action against it. For, in the language of the supreme court of the United States in The Bank of Augusta v. Earle, 13 Peters 588. “ a corporation exists only in contemplation of law and by force of the law; and where that law ceases to operate and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot-migrate to another sovereignty.” Though there had been no conflict in the opinions of the two courts referred to, and both had decided under their laws that the attachment did not lie, the decisions would not have affected the construction of our statute. The law in each case contemplated a legal proceeding in the ordinary tribunals and in the accustomed mode.
Nothing of the kind is found in our act. The whole jurisdiction is confided to a court of equity. The proceeding is a bill for relief. The defendant may appear: this a corporation can do by attorney. The defendant *589 can discharge the attached effects by giving security to r , , , • i • r portorm the decree : such security may be given ror a corporation by a third party, or it can deposite the amount in court. And whether the defendant appears and answers or not, the court hears the case upon the proofs and pronounces a final decree. In Beaston v. The Farmers Bank of Delaware, 12 Peters 134, 5. the court say that corporations are to be deemed and considered as persons, when the circumstances in which they are placed are identical with those of natural persons included in the statute. The circumstances in which they are placed by our act are identical with those of the natural person who continues without the state. The same opportunity, and to the same extent, is afforded to each for defending the suit; and after the seven years have expired, the decree is conclusive as to both, without the service of a copy, or any thing more being done. None of the reasons which created a doubt under the laws of New York and Pennsylvania apply : no action at law, no ulterior proceeding in the accustomed mode is provided for or contemplated.
Upon principle, and in view of the construction given to the act in the cases occurring under it, the jurisdiction, I think, may be maintained. But if this were more doubtful than it seems to me it is, there are other grounds upon which the jurisdiction may be supported.
For civil purposes, corporations are in law deemed persons. The United States v. Amedy, 11 Wheat. 393. This proposition has not been controverted. In the case of Beaston v. The Farmers Bank of Delaware, above cited, the question arose whether the act of congress giving priority in certain cases to the United States extended to corporations ? The words of the act arc, “ When any revenue officer or other person becoming indebted &c.” The court decided that corporations were included. So in Stribbling v. The Bank of the Valley, 5 Rand. 132. the word person in the law against usury was held to *590 embrace corporations. The only doubt has been whether that word would be so construed as to embrace them within the purview of penal statutes : and in the case of The United States v. Amedy, the court, upon the authority of lord Coke in 2 Inst. 736. decided, that under the act of congress making it felony to destroy a vessel with intent to prejudice any person or persons that hath underwritten, corporations were comprehended by the words person or persons. The word being sufficiently comprehensive to embrace corporations, “ it must be held to embrace them” (in the language of judge Cabell in Stribbling v. The Bank of the Valley) “ unless there be something in the law shewing the legislative intention to restrict its application.” Were it necessary, this construction might be supported by a reference to the enacting clause. The language there is, “ a suit in chancery against a defendant or defendants out of the state;” terms sufficiently broad to include every party, whether natural or artificial, capable of being sued. A corporation is as much within the mischief as a natural person. It is capable of contracting, of holding effects. There is nothing in the law restricting the remedy to natural persons ; and the terms being sufficiently extensive to include corporations, the jurisdiction, it seems to me, is clear.
I am for affirming the order.