## Southern Delaware County Authority v. Boothwyn Farms Company

514

*Basil C. Clare,* for exceptants.
*Joseph W. deFuria,* contra.

BLOOM, J., September 6, 1967.—This matter comes before the court en banc on exceptions filed by Booth-wyn Farms Company and Dresner Company to findings of separate juries of view that the petitions filed in their behalf to have damages assessed for the taking of certain real estate owned by them for the construction of a sanitary sewer are barred under the applica-

ble statute of limitations. By stipulation of the parties, testimony had been offered solely in connection with this issue, it being further agreed that Dresner Company and Boothwyn Farms Company had the right to immediately file exceptions if the findings on this issue were adverse to them.

The record discloses that on November 25, 1958, the Authority adopted three resolutions of condemnation relating to the lands involved in the within actions located in Upper Chichester Township for the purpose of placing a sanitary sewer line. All three resolutions referred to Boothwyn Farms Company as the registered owner. Certain of the condemned properties were not owned by Boothwyn Farms Company. In fact, Dresner Company was the owner of record. Petitions for appointment of viewers in these cases were not filed until January 5, 1965.

By virtue of the Authority's organization by Upper Chichester Township, it is empowered to exercise the right of eminent domain in the same manner as the township: Act of May 2, 1945, P. L. 382, sec. 11, as amended June 12, 1947, P. L. 571, 53 PS §314. At the time of the passage of the resolutions for condemnation, the applicable statutory provision with regard to the limitation for the bringing of an action to secure damages was as follows:

"No person having an interest in any land, property or material appropriated, taken, used, occupied, injured, destroyed or otherwise adversely affected by any political subdivision or authority in the exercise of its power of eminent domain may petition for the appointment of viewers for the assessment of damages or bring an action for damages after the expiration of a period of six years from the date on which the political subdivision or authority became entitled to possession of the land, property or material or any interest therein. This act shall not apply to petitions

for the appointment of viewers for the assessment of damages or to actions for damages as the result of the exercise of the power of eminent domain by any authority unless (1) a copy of the resolution by which such authority exercises its power of eminent domain is personally served on the owner of the affected property, or (2) if the owner cannot be served personally, service of a copy of the resolution is made on the owner by registered or other mail service as will result in the post office department making a record of delivery and the sender receiving a receipt signed by the addressee or his agent evidencing delivery, or (3) if the owner cannot be served personally or by mail as herein provided, unless the resolution is published at least one time in a newspaper of general circulation in the county in which the affected property is located and at least one time in the legal periodical, if any, of such county": Act of April 3, 1956, P. L. (1955) 1366, sec. 2, 26 PS 152.

Thus, under this provision, the statute of limitations begins to run from the date on which the Authority became entitled to possession, provided service of the resolution has been made in an appropriate manner. The First Class Township Code provided that a condemnee became entitled to possession when it had "tendered a bond to secure the payment of damages, and the same has been accepted, or if the acceptance has been refused and the bond has been filed in and approved by the court . . .": Act of June 24, 1931, P. L. 1206, art. XIX, sec. 1903, as amended, May 27, 1949, P. L. (1955) 53 PS §56903.

Hence, the legal framework dictates a determination as to when, if ever, service was made of the appropriate resolution as well as tender of the bond so as to commence running of the statute of limitations.

The Authority contends that service was made of both the resolution and the bond on December 2, 1958,

and that, therefore, the applicable statute of limitations expired on December 2, 1964. On the other hand, the condemnees submit that service was never made in fact, and, if made in the manner described in the testimony in behalf of the Authority, then that service was invalid. The basis of the Authority's position is a handwritten notation on a folder in the Authority's file bearing the caption "Boothwyn Farms (Dresner)", which notation reads as follows:

"12/2/58. Mr. Burns served ctfd copy of condemnation and bond of three properties on Mr. Storck, secretary, and accepted by him".

The testimony discloses that this notation was placed on the folder by the secretary to William A. Burns, Esq., the then solicitor of the Authority, at his direction, the day following the alleged transaction. Mr. Storck testified that he was a personal secretary to Isidore Dresner at his Boothwyn real estate office, and that he was paid by Boothwyn Construction Company. He further testified that he was never an officer of either corporation, and he denied conducting any business for the Boothwyn Farms Company or Dresner Company, or that he had ever received any condemnation papers from Mr. Burns.

Both Isidore Dresner and his son, Milton Dresner, testified that Boothwyn Farms Company and Dresner Company had their offices in Philadelphia and neither corporation conducted any business at the office in Boothwyn. However, Isidore Dresner was an officer in both corporations and held substantial stock in both companies. There was further testimony that William A. Burns, Esq., was also the attorney for Isidore Dresner and during the period in question had been in contact with him on frequent occasions. Nevertheless, the Dresners denied any knowledge of the condemnation until long after the resolution and the date of the alleged service.

With this basic factual setting in mind, we turn to the consideration of the matters individually.

## 1. THE DRESNER COMPANY

The matter with respect to the Dresner Company resolves itself to a principle which is fundamental to the exercise of the power of eminent domain in this Commonwealth. Though recognized as necessary, the power to take private property is regarded as harsh and peremptory, and its grant and manner of exercise have been strictly construed by the courts: Pennsylvania Telephone Company v. Hoover, 209 Pa. 555, 557; Seligsohn Appeal, 410 Pa. 271, 275. By mandate of the Constitution of the Commonwealth, no private property may be taken for public use without compensation, "which compensation shall be paid or secured before such taking": article XVI, sec. 8.

The question in this case is whether the taking was ever secured by tender of the bond to the owners required by the provision of the First Class Township Code cited above. Was the taking of the property owned by Dresner Company properly secured by a bond designating Boothwyn Farms Company as owner and obligee thereunder? A similar question has been considered by the Supreme Court in a somewhat different setting. In Lutz v. Allegheny County, 302 Pa. 488, a husband and wife who owned certain real property sought to enjoin the county commissioners from taking the real estate. Various objections to the propriety of the condemnation procedure were raised but were rejected by the lower court and the Supreme Court. However, in one respect the Supreme Court found the procedure deficient:

"The difficulty we find with appellee's (condemnor's) proceeding is that it tendered a bond to and filed it against the property in the name of only one of the parties. This was a mistake. A proper bond should be filed for both appellants (condemnees)

. . . Whenever this is done, appellee will then be in a position to enforce its right to possession": Pages 494-95.

The fundamental deficiency present in the Lutz case would seem to be present here, laying aside the question of the propriety of tender of the bond and service of the resolution.

However, the Authority seeks to avoid this difficulty by arguing that the corporate entity should be pierced because of the ownership interest in each held by Isidore Dresner. Of course, there are situations when disregard of the corporate entity is appropriate, but there are no circumstances in this case which would warrant departure from the normal rule that "separate corporations retain their distinct identities notwithstanding the fact that they may have common stockholders, directors, and officers": Shelburne Sportswear, Inc. v. Philadelphia, 422 Pa. 199.

We, therefore, conclude that the Authority never having prepared a bond for the property of Dresner Company, did not become entitled to possession, and thus the petition filed by Dresner Company cannot be considered to be barred by the statute of limitations.

## II. BOOTHWYN FARMS COMPANY

The question with regard to Boothwyn Farms Company relates to the propriety of the service of the bond and resolutions. We shall assume, without deciding, that the notation on the file folder was properly admitted into evidence as a business record, and that the facts recited therein are correct. Nevertheless, we conclude that service was not made in a proper manner upon the corporation.

It must be pointed out that there is no prescribed method of personal service of a condemnation resolution or bond on a corporation under the applicable statutory provisions. The Pennsylvania Rules of Civil Procedure are inapplicable by their terms. How-

ever, the Authority submits that the standards of the Pennsylvania Rules of Civil Procedure have been met, and we shall assume that the same standards are applicable. It sould be noted that the Rules of Civil Procedure and the antecedent statutes upon which they are based expand the modes by which personal service can be made upon a corporation: Nash v. Evangelical Lutheran Church, 1 Miles 78, 79. The specific question involved is whether service was made in accordance with Pa. R.C.P. 2180 (a) (2) by handing a copy of the resolution and bond "to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation". The Authority contends that the office in Boothwyn was a regular place of business of Boothwyn Farms Company. Although the court has serious doubt as to whether the office in Boothwyn was a regular place of business of Boothwyn Farms Company, the resolution of that issue does not determine the matter for the requirements of the statute with regards to the bond do not appear to have been met. The act specifically requires that the bond not only be tendered but also accepted. Acceptance implies that there must be authority to accept. The record is devoid of any evidence to support Storck's authority in this regard. In fact, the totality of evidence is to the contrary. The evidence was that Storck was merely a clerk. As we have alluded to above, there is a strong policy to construe these matters strictly. At best, the regularity of the procedure in this case is questionable. Under the circumstances, we conclude that the doubts engendered by it must be resolved in favor of the condemnee.

For these reasons we enter the following

ORDER

And now, September 6, 1967, upon consideration of the exceptions to the report of the jury of view filed by Boothwyn Farms Company and Dresner Company,

and after argument before the court en banc, it is ordered and decreed that:

1. The matter relating to Boothwyn Farms Company is remanded to the respective board of view for the taking of testimony on the issue of damages;

2. The matter relating to Dresner Company is remanded to the respective board of view for the taking of testimony on the issue of damages;

3. Appropriate exceptions are noted for the Southern Delaware County Authority in each case.